**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Citadel Energy Holdings, LLC, *et al*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11322(KJC)<br>(Jointly Administered)<br><br>**Hearing Date: TBD**<br>**Objections Due: TBD** |

**MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT OF A TRUSTEE, OR IN THE ALTERNATIVE FOR THE APPOINTMENT OF AN EXAMINER OR THE CONVERSION OF THE CASES TO CHAPTER 7**

Andrew R. Vara, Acting United States Trustee for Region Three ("U.S. Trustee"), through his counsel, files this Motion (the "Motion") for the entry of an order directing the appointment of a trustee pursuant to 11 U.S.C. §1104(a) (1) and 1104(e). Alternatively, the U.S. Trustee requests the appointment of an examiner pursuant to 11 U.S.C. § 1104(c), or an order converting the cases to cases under Chapter 7 pursuant to 11 U.S.C. § 1112(b)(1). In support thereof, the U.S. Trustee respectfully represents as follows:

## I. PRELIMINARY STATEMENT

1. Cause exists to appoint a chapter 11 trustee under section 1104(a) of the Bankruptcy Code due to the fraud, dishonesty, incompetence, and gross mismanagement of the Debtors' general partners and those they have placed into positions of responsibility. Appointment of a trustee would also be in the best interests of creditors, equity security holders, and other interests of the estate, because the Debtors' general partners have shown that they cannot be trusted to carry out the fiduciary duties imposed on management of a chapter 11 debtor in possession. The need for a Chapter 11 trustee in this case is exemplified by the following actions (and inactions) of the Debtors' general partners:

a. Before the Debtors' petition was filed, their general partner (and former Manager) Stanton Dodson "looted the Debtors," in the Debtors' own words – and yet the Debtors are taking insufficient action to recover the transferred assets and are now stating that they "don't have an opinion" on whether Stanton Dodson's actions were wrongful;

b. The Debtors' other general partner, Mark Dunaway, also acted as Manager pre-petition, yet he, at a minimum, failed to uncover Stanton Dodson's improper actions;

c. The Debtors were formed in such a way that limited partners invested at least $4.7 million into a shell company that held no assets, while the Debtors' two general partners collectively own 95% of the operating company that owns the only valuable assets in these cases, without having invested any of their own money;

d. In the months leading to the Debtors' bankruptcy filing, and after Stanton Dodson's wrongful acts were uncovered, the Debtors' sole ownership interest in an operating, profitable non-debtor was transferred to another non-debtor without compensation;

e. The Debtors have entrusted a non-management employee, hired less than a year ago, who has some ties to Stanton Dodson and who has no financial, auditing, legal or reorganizational employment background, to unravel their corporate structure and financial affairs;

f. The Debtors do not know if their state and federal tax returns for 2013 were filed and do not maintain any D&O insurance; and

g. To date, the Debtors have still not fixed their books and records – or even determined which corporate entities exist.

2. Given this record, the Debtors' general partners cannot be trusted to faithfully and competently carry out the statutory and fiduciary duties of a Chapter 11 debtor in possession. Creditors, as well as potentially defrauded investors, require an independent, conflict-free, and experienced fiduciary to manage the Debtors, unravel their financial affairs, recover purloined assets, and determine appropriate litigation and reorganization strategies.

3. In the alternative, if a Chapter 11 trustee is not appointed, this record supports the appointment of an examiner under section 1104(c) of the Bankruptcy Code or conversion of the case to chapter 7 under section 1112(b) of the Bankruptcy Code.

## II. JURISDICTION

4. Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Motion.

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of cases commenced under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest…that the Trustee has standing to attempt to prevent circumvention of that responsibility." ); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for 'protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

6. Moreover, under 11 U.S.C. § 1104(e), the U.S. Trustee shall move for the appointment of a trustee "if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer . . . participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or

the debtor's public financial reporting."

7. The U.S. Trustee has standing to be heard on this Motion pursuant to 11 U.S.C. § 307.

## III. STATEMENT OF THE FACTS

8. On June 19, 2015, the Debtors commenced voluntary cases (the "Petitions") under Chapter 11 of the Bankruptcy Code.

9. An official committee of unsecured creditors was appointed on July 20, 2015. (D.E. 15).

10. The Debtors are five of many entities in which Stanton Dodson and Mark Dunaway are general partners and that are related to the oil and gas industry in the Bakken Shale region of North Dakota and Montana. *See* Declaration Of Michael West ("West Dec."), attached as Exhibit 1, at ¶ 8.

11. On July 28, 2015, the U.S. Trustee conducted the Section 341(a) meeting of creditors in these cases. Testifying on behalf of the Debtors was Mr. Christopher Nicholas, who is their Regional Business Analyst.

### A. Allegations of Fraud and Theft of Funds

12. In the Debtors' initial pleadings with this Court, the Debtors acknowledged that Stanton Dodson, a former Manager and current General Partner of the Debtors, engaged in fraudulent activity. *See* Declaration In Support Of The Debtors' Petitions And First Day Motions ("First Day Aff.") (D.E. 5), at ¶ 11 & 12 ("Additionally, ***the Debtors' former general partner used the funds for his personal gain rather than paying generated construction bills***;" "As a result of the economic downturn in the Debtors' industry and ***the theft of funds by the***

***Debtors' former general partner****…"*(emphasis added)); Emergency Motion By Debtors To Enforce Automatic Stay And To Assess Sanctions And Costs Against Drew Evans And PaperCloud, Inc. For Violating The Automatic Stay (D.E. 15), at ¶ 7 ("Before the Petition Date, believing that PaperCloud's services were not necessary and that Evans' close association with Stanton Dotson, ***the former officer who had looted the Debtors***, was problematic…").

13. The initial pleadings attempted to distance Mark Dunaway, the current Manager, from the allegations of fraud. The Debtors informed this Court only that, "a complaint alleging, among other things, breach of fiduciary duty and fraud relating to the activities of the Debtors' ***former general partner*** was filed in the Superior Court of the State of California." First Day Aff., at ¶ 13 (emphasis added).[1] The Affidavit failed to disclose that the complaint also included allegations of breach of fiduciary duty and fraud against Mark Dunaway, as well as Mark Christopher Dopson (the Debtors' Director of Operations).[2] West Dec., at ¶ 29 & Exh. B (*Leland Properties. LLC, et al. v. Citadel Energy Partners, LLC, et al.*, Case No. BC584818, filed June 11, 2015) (the "Leland Complaint").

14. In fact, the Leland Complaint, at paragraph 28, includes significant allegations of wrongful conduct by Mark Dunaway:

---

[1] Stanton Dodson is not, in fact, a "former general partner." Stanton Dodson retains his ownership interests, directly or indirectly, in each Debtor. West Dec. at ¶¶ 8, 13.c,14.e. Yet, the Debtors' first day pleadings included a corporate chart that did not reveal Stanton Dodson's status as owner, and several of their pleadings referred to his removal as "general partner," leaving an impression that Stanton Dodson had been completely removed from these Debtors. The Debtors have provided the U.S. Trustee only with a single letter, purportedly removing Stanton Dodson as the *Manager* of one of the Debtors (Pembroke), and the Debtors' Statements of Financial Affairs list Stanton Dodson as an owner of the two debtor entities in which he has a direct ownership interest.

[2] The key players in these cases are Stanton Dodson, Mark Dunaway, Mark Christopher Dopson (who goes by Chris), and Christopher Nicholas. Due to the potential confusion caused by the similarities of certain names, each person's full names will be used throughout.

Upon information and belief, at all times herein mentioned, Dodson and Dunaway have been the alter egos of Citadel Energy Partners, LLC, Citadel Energy SWD Holdings, LLC, Fort Berthold Water Partners, LP, and Citadel Watford City Disposal Partners, LP, as well as numerous other shell companies owned and/or controlled by Dodson and Dunaway; characterized by a unity of interest in ownership and control such that any individuality and separateness between them have ceased; with each entity being a mere shell instrumentality and conduit through which Dodson and Dunaway carried on their business by use of the entity's name; with the entity's business being so completely controlled, dominated, managed, and operated by Dodson and Dunaway such that any individuality or separateness between them does not and did not exist; and with Dodson and Dunaway intermingling the assets of themselves and the entities in order to suit the convenience of themselves and in order to evade payment of obligations and legal liability to various limited partners, investors, licensees, vendors, and other third parties. Such intermingling and disregard for corporate formalities included, but was not limited to:

- Dodson and Dunaway unilaterally instructing employees, contractors, and vendors to provide goods or services to each of the entities;

- Dodson and Dunaway's undercapitalization of entities controlled by them at all phases of development, construction, and operation, resulting in each entity repeatedly being unable to pay its own liabilities in the ordinary course of business, and incurring substantial debts, liens, and operating deficits;

- Dodson and Dunaway's unilaterally using monies belonging to one entity to pay the expenses of other entities, expenses of themselves personally, or to provide capitalization to newly formed entities, and to otherwise suit their convenience;

- Dodson and Dunaway's unilaterally comingling the assets of the various Citadel- related entities, including FBWP and CWCDP, with each other and with their personal assets;

- Dodson and Dunaway's unilateral taking of

> business related actions as to one entity in direct response to actions that occurred at another entity or to themselves personally;
>
> • Dodson and Dunaway's transferring of monies provided to a specific entity by investors in that entity to other entities or to themselves personally, and without the knowledge or authorization of the relevant investors;
>
> • Dodson and Dunaway's ignorance of and disregard for corporate formalities when forming, organizing, and operating the entities, and each of them, including as set forth above and herein; and
>
> • Dodson and Dunaway's unilateral transfer of assets, supplies, and employees from one entity to other entities.

*Leland Complaint* (West Dec., at Exh. B, ¶ 28).

15. The Leland Complaint, at paragraph 50, also alleges that Chris Dopson, the current Director of Operations, was "loyal to the Citadel General Partners only." West Dec., at Exh. B, ¶ 50.

16. Prior to the Petition Date, Mark Dunaway also acted as a Manager of the Debtors. West Dec. at ¶ 33. Mr. Dunaway executed contracts on behalf of the Debtors and had check-signing authority over the Debtors' bank accounts. *Id.* at ¶¶ 34-36.

17. Despite previously admitting to Stanton Dodson's fraud, the Debtors have begun backtracking on that position. At the Debtors' Section 341(a) meeting, the Debtor's representative, Christopher Nicholas, testified that (a) the Debtors have uncovered evidence that transfers occurred in and out of the debtor and non-debtor entities and that the transfers seem to be personal transactions relating to Stanton Dodson; (b) Stanton Dodson said it was his right per the documents to make such transactions; and (c) the Debtors have not yet formed an opinion

regarding the transfers.[3] *Id.* at ¶ 49.

18. There is an on-going Securities and Exchange Commission ["SEC"] investigation of pre-petition fraudulent activity. (See D.E. 17, 6/29/15, PaperCloud, Inc. stay relief declaration at ¶ 9, "On Friday, June 12, 2015, Mr. Nicolas telephoned to let me know that the [SEC] was investigating Citadel, and asked me to make backups of all the email accounts.") The SEC subpoena included a demand for all emails of both Stanton Dodson and Mark Dunaway. West Dec. at ¶ 32.

**B. The Corporate Structure of the Debtors**

19. Attached at Exhibit A to the West Declaration is a corporate chart, which depicts the Debtor entities and those non-debtors who either have an interest in, or are owned in part by, the Debtor entities. The chart does not depict the many other corporations ultimately owned and controlled by Stanton Dodson and Mark Dunaway.[4]

20. The Debtors' corporate structure has Stanton Dodson and Mark Dunaway each owning a 47.5% interest in the only Debtor that has any significant assets (Pembroke Fields), and their pre-petition corporate counsel owns the remaining 5%.[5] The Debtors' witness at the 341 meeting testified that neither Stanton Dodson, Mark Dunaway nor corporate counsel invested

---

[3] The Debtors' records show significant transfers of Debtors' funds to or for the benefit of Stanton Dodson, including $38,473.52 in disbursements to or on behalf of Stanton Dodson from a single bank account in the month March 2015. West Dec. at ¶¶ 49-50. These transfers are not included in the Debtors' Statements of Financial Affairs, even though they are transfers to an insider within one year of the bankruptcy filing.

[4] The Debtors attached to their First Day Affidavit what purported to be a corporate chart. CES' Schedule B attached that same corporate chart, as well as a second corporate chart. The testimony at the 341meeting established that both of these charts are incomplete and contain inaccuracies.

[5] The corporate entity who holds the 5% interest in the Debtors is owned by Louis Bridges, who is also a defendant in the Leland Complaint. West Dec. at ¶ 13.a, fn 1.

any of their money into Pembroke Fields or any other debtor entity.[6] West Dec. at ¶ 13.

21. The limited partner (LP) investors who provided the only capital to the Debtors, for the construction of the Pembroke Fields salt water disposal facility, own interests in a shell company that has little to no assets[7] and was formed solely to collect the investments. West Dec. at ¶ 11.

22. Along the left side of the chart, the corporate ownership of Pembroke Fields is depicted. Pembroke Fields is an operating debtor, which operates a salt water disposal facility located in Watford City, North Dakota. Pembroke Fields' assets include land-lease rights, salt water disposal permits and solids permits. West Dec. at ¶ 9-10.

23. Pembroke Fields' schedules show that it has approximately $6 million in assets, against approximately $3.5 million in liabilities. *See* Schedules filed for Pembroke Fields, LLC (D.E. 57) at page 2 of 31.

24. The Debtors originally indicated that Debtor Citadel Energy Holdings, LLC owned 95% of Pembroke Fields, which in turn they allege was owned 50% by Stanton Dodson and 50% by Mark Dunaway. They now claim that this entity was "cancelled" pre-petition and no longer exists. In light of this "cancellation," they allege that Stanton Dodson and Mark

---

[6] The Debtors have stated that Mark Dunaway "may" have invested some funds in the form of personal loans that he took out and provided to the Debtors early in 2015, but that the original intent was that both Stanton Dodson and Mark Dunaway would only be investing "sweat equity". West Dec. at ¶ 13.c, fn 2. In addition, these alleged personal loans of Mark Dunaway appear to be listed as disputed unsecured claims on the Debtors' Schedules, as owed directly by the Debtors to the lenders, and Mark Dunaway is not listed as a co-debtor on Exhibit H. *See* Schedules filed for Citadel Energy Services, LLC (D.E. 54), at page 17 of 36 (listing $150,598.25 claim owed to J.W. Equities, *et al.*, page 20 of 36 (listing $184,888.85 claim owed to Focus), and page 22 of 36 (not listing Mark Dunaway as a co-debtor for these claims).

[7] The only asset listed in the Debtors' schedules for this shell company is a $1.1 million receivable from another debtor for "start-up capital."

Dunaway each own 47.5% of Debtor Pembroke Fields directly. West Dec. at ¶ 13; Statement of Financial Affairs for Pembroke Fields (D.E. 55) at page 28.

25. The remaining 5% of Pembroke Fields is owned by Calumet Industries of Georgia, LLC. This entity is related to the Debtors' pre-petition corporate counsel, who assisted, in part, with setting up the Debtors' corporate structure. Calumet did not provide any capital for its interest, but rather received its interest in lieu of legal fees. West Dec. at ¶ 13.a.

26. Along the right side of the corporate chart, the corporate ownership of Citadel Watford City Disposal Partners, LP ("CWCDP") is depicted.

27. CWCDP was formed as a shell entity to collect investments provided by the limited partners. West Dec. at ¶ 11. According to the Debtors' representative at the 341 meeting, the marketing documents provided to investors disclosed that CWCDP would be a shell entity, and that, "upon completion" of the well bore owned by Pembroke Fields, all of Pembroke Fields' assets would be transferred to CWCDP.[8] *Id.* at ¶ 16.

28. According to the Debtors, "completion" occurred in or around October 2014. Yet, no assets have been transferred to CWCDP to date. *Id.* at ¶ 18.

29. The limited partners own 47.5% of CWCDP. Debtor Citadel Energy Services, LLC ("CES") owns 100% of Citadel Energy SWD Holdings, LLC, which in turn owns another 47.5% of CWCDP. The remaining 5% interest is owned by Leland Partners LLC, an entity related to the largest creditor of the Debtors. The Debtors assert that this interest was granted to Leland Partners LLC in exchange for it bringing the opportunity to lease the land upon which

---

[8] A representative of a limited partner has informed the U.S. Trustee's office that it believed it was investing directly into the company that held the assets. West Dec. at ¶ 17.

Pembroke Fields built its well bore.   *Id.* at ¶ 14 a-d.

    30.    CES is, in turn, owned by Stanton Dodson and Mark Dunaway.[9]   *Id.* at ¶14.e.

    31.    Mark Dunaway is the current Manager of CES, SWD and Pembroke.   He is the "Manager of the General Partner" of CWCD.   *See* Petitions (D.E. 1).

    32.    Thus, the current Manager of the Debtors is the ultimate owner of 47.5% of Pembroke Fields.   The limited partners, who invested $4.7 million into the shell company CWCD, appear to have no ownership claim to Pembroke Fields.

    33.    The Schedules filed by the Debtors and signed by Mark Dunaway do not indicate that CWCDP has any claim to the assets of Pembroke Fields, nor do they disclose the purported representation in the offering documents that all of the Pembroke Fields assets would be transferred to CWCDP "upon completion."   *See* Schedules for Citadel Watford City Disposal Partners, LP (D.E. 56) at page 2 of 23 and page 5 of 23.

    34.    Rather, the schedules filed for CWCDP merely shows, as an asset, a $1.1 million unsecured claim against Pembroke Fields for "start-up capital."   *Id.*   This unsecured claim, however, is not listed in Pembroke Fields' schedules.   *See* Schedules for Pembroke Fields, LLC (D.E. 57) at pages 13-17 of 31.   The Debtors have not, to date, explained what happened to the rest of the $4.7 million invested by the limited partners.

    35.    In addition, prior to the petition date, Debtor CES owned 80% interest in non-debtor Citadel H2O, LLC.   Prior to March 2015, Citadel H2O, LLC operated a fresh water

---

[9] One of the corporate charts attached to CES's Schedule B lists two other individual owners of CES, Eric Holomon and Nicholas Temple.   However, the Statement of Financial Affairs lists only Stanton Dodson and Mark Dunaway as holding any interest in CES.   D.E. 54, at pages 9 & 31.   The testimony at the 341 meeting also confirmed that Stanton Dodson and Mark Dunaway are the only owners of CES.   West Dec. at 14.e.¶

business in North Dakota. In March or April 2015, all of Citadel H2O, LLC's assets were transferred to non-debtor H2O Partners, LP ("H2O Partners"), for no consideration. West Dec. at ¶¶ 20-27.

36. Prior to March 2015, Debtor CES was the sole general partner of this non-debtor to which the fresh water business was transferred, H2O Partners.[10] But in March or April 2015, Debtor CES was removed as general partner of non-debtor H2O and replaced by non-debtor H2O GP Partners, again for no consideration.[11] *Id.* Thus, through these two transactions, Debtor CES no longer has any ownership interest in the fresh water business.

**C. The Debtors Are Being Mismanaged**

37. The Debtors' former in-house accounting personnel and controllers were let go by Stanton Dodson and not replaced. West Dec. at ¶ 37.

38. Although Mark Dunaway allegedly uncovered, or was informed about, the alleged theft and wrongdoing of Stanton Dodson in late 2014 or early 2015, as of the 341 meeting held on July 28, 29015, the Debtors have still not figured out their corporate structure or their financial information. They do not even know if they are delinquent in filing their state or federal tax returns. *Id.* at ¶ 45.

39. The Debtors' Regional Business Analyst, Christopher Nicholas, has been tasked with unravelling both the corporate structure and the Debtors' financial affairs. Mr. Nicholas is

[10] H2O Partners, like CWCDP, was a shell entity that collected equity investments from limited partners, to fund the completion of the fresh water business owned by Citadel H2O, LLC, with the expectation that the assets would be transferred to H2O Partners upon completion. Completion occurred in August 2014, but no assets were transferred until March or April 2015. West Dec. at ¶¶ 22-23.

[11] According to Christopher Nicholas, H2O GP Partners was established to replace CES as the general partner. West Dec. at ¶ 25. The corporate existence of H2O GP Partners has not been verified.

not a manager or officer of the Debtors.    He has only been employed by the Debtors since September 2014.    *Id.* at ¶ 38.

40.    Mr. Nicholas testified that he is the childhood best friend of a cousin of Stanton Dodson.    Prior to being elevated to Regional Business Analyst, Mr. Nicholas was a Project Manager, who would work on special projects for Stanton Dodson and Mark Dunaway.    *Id.* at ¶ 39.

41.    Mr. Nicholas has an undergraduate and masters degree in communications.    He does not have a finance, accounting, auditing, legal or reorganizational employment background.[12]    *Id.* at ¶ 40.

42.    Mr. Nicholas testified that he was selected to be the representative of the Debtors at the 341 meeting because "[he has] the most extensive knowledge of the company and its situation having worked directly with Mark, Stanton, [and] Chris in a large amount of roles, and [he has] also been responsible for piecing together a lot of the information that's been requested."    *Id.* at ¶ 41.

43.    The Debtors have stated they are not in possession of all of the Debtors' books and records, and that some of the Debtors kept multiple books and records.    *Id.* at ¶ 42.    The multiple books and records contain certain contradictory information. Copies of the contradictory financial statements are attached to the West Declaration at Exhibit C.    They include significantly different balance sheets and statements of profits and losses created at or near the same date.

44.    Some of the Debtors' books and records remain with Stanton Dodson, who also

---

[12]    Mr. Nicholas has stated that he is six credits shy of an accounting degree.    West Dec. at ¶ 40.

retained a computer of the Debtors. *Id.* at ¶ 44.

45. The Debtors have stated that they do not know if they have filed their 2013 state and federal tax returns despite the fact that the Debtors have used the same accounting firm for a number of years.[13] The Debtors have sought to retain this same accounting firm, which was retained and used by Stanton Dodson. *Id.* at ¶ 45.

46. The Debtors make inter-company transfers with respect to CES employees who perform services for Pembroke Fields. In response to the U.S. Trustee's inquiry regarding documentation of such arrangements, the Debtors provided a copy its only agreement entitled Pembroke Fields, LLC, Operation and Management Services Agreement. The agreement is between Pembroke Fields, LLC and Citadel Management Services, LLC ("CMS"). The agreement is dated July 25, 2014 and is executed by Mark Dunaway as Manager representing both parties to the agreement. The Debtors do not believe that this agreement was utilized and are unsure whether Citadel Management Services, LLC exists. *Id.* at ¶ 34.

47. Currently, the Debtors' books are not maintained contemporaneously in the Debtors' software system. Rather, the Debtors create invoices for billing, make payment on accounts payable, and then forward this information to their outside accountants, who maintain the Debtors' books and records. *Id.* at ¶ 46.

48. Mr. Nicolas testified that he makes deposits and authorizes bill payments. Chris Dopson and Mark Dunaway have check signing authority, but only one person is required to sign checks. The Debtors recently discovered, post-petition, that a third person (a limited partner) has or had check signing authority. *Id.* at ¶ 47.

[13] The Debtors have stated that their 2014 returns are not yet due.

49. The Debtors do not have D&O insurance. *Id.* at ¶ 49.

50. The Debtors have made numerous incorrect or inconsistent statements in this case, including:

a. Certificate of Company Resolution and Incumbency of Pembroke Fields (D.E. 1 in case 15-11324, filed 6/19/15), incorrectly states that the entity is a Delaware limited liability company, when it is a North Dakota limited liability company.

b. Certificate of Company Resolution and Incumbency of Citadel Energy SWD Holdings, LLC (D.E. 1 in case 15-11325, filed 6/19/15), conspicuously does not provide its state of incorporation.

c. The Debtors filed a petition for Citadel Energy Holdings, LLC, (D.E. 1) along with a certification that the Debtor is "a duly organized and validly existing Delaware limited liability company" and that a board meeting was held to authorize the filing, but the Debtors now assert that this entity no longer exists, although, as of the 341meeting, they are still looking into this issue.

d. The Debtors have filed misleading and inaccurate corporate structure charts, and have filed pleadings given the misleading impression that Stanton Dodson was removed as general partner;

e. The Debtors filed a motion for relief from the automatic stay, stating, "The actions of PaperCloud and Evans are also actions to collect a disputed, prepetition claim against the Debtors in violation of the automatic stay." *Emergency Motion By Debtors To Enforce Automatic Stay And To Assess Sanctions And Costs Against Drew Evans And Papercloud, Inc. For Violating The Automatic Stay* (D.E. 15), at ¶ 14. Yet, the Debtors did not list either PaperCloud or Evans in their schedules. *See* Schedules for each Debtor (D.E. 54, 55, 56 & 57) at Schedule F.

f. CWCD lists in its Schedules a receivable owed to it by Pembroke Fields, but Pembroke does not list CWCD as a creditor in its Schedules. *See* Schedules (D.E. 56) at p. 5 of 23, (D.E. 57) at pages 13-17.

## IV. <u>ARGUMENT</u>

51. Creditors, as well as potentially defrauded investors, require an independent, conflict-free, experienced party investigating the financial affairs of these debtors - - someone who can determine an appropriate reorganization or liquidation strategy, free from the

constraints of current management.

52. 11 U.S.C. § 1104(a) states that the Bankruptcy Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the UST, and after notice and a hearing:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

11 U.S.C. § 1104(a).[14]

53. Further, Bankruptcy Code Section 1104(e) mandates the U. S. Trustee to move for the appointment of a trustee if there are reasonable grounds to suspect that members of current management participated in, among other things, fraud or dishonesty in the management of the debtor or the debtor's public financial reporting.

54. Subsection (1) of Section 1104(a) addresses management's pre and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue*

[14] A number of courts have indicated that grounds for the appointment of a trustee must be established by "clear and convincing" evidence. *See In re G-1 Holdings, Inc.*, 385 F.3d 313 (3d Cir. 2004). However, in light of Supreme Court precedent and the addition of §1104(e) to the Bankruptcy Code, the better view is that the appropriate burden of proof should be the "preponderance of the evidence". *See Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991)).

*Place Associates,* 171 B.R. 615, 623 (N.D. Ill. 1994). Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.),* 285 B.R. 148, 158 (Bankr. D. Del. 2002).

55. The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *See In re Marvel Entertainment Corp.*, 140 F.3d 463, 472 (3d Cir. 1998) (quoting *Committee of Dalkon Shield Claimants v. A.H. Robbins Co.,* 828 F.2d at 242). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). *See, e.g., In re Sharon Steel Corp.,* 871 F.2d 1217 (3d Cir. 1989); *In re Colby Construction Corp.*, 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985). The determination of whether cause exists must be taken on a case by case basis, taking into account all relevant factors. *Sharon Steel*, 871 F.2d at 1225. Pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.,* 185 B.R. 615, 619 (Bankr. D. Wyo. 1995).

56. In its decision in *In re Marvel Entertainment Group, Inc.,* the Third Circuit quoted the following passage approvingly in affirming the appointment of a Chapter 11 trustee:

> The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) ***commands*** that the stewardship of the reorganization effort must be turned over to an ***independent trustee***.

*Id*. (quoting *In re V. Savino Oil & Heating Co., Inc*., 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989))

(emphasis added).

57.     The Third Circuit in *Marvel* further stated that appointment of a trustee is mandatory if cause is found under 11 U.S.C. §1104(a)(1), and while it is not mandatory under subsection (a)(2), the Third Circuit held that the district court's refusal in that case to appoint something less than a trustee was not an abuse of discretion.  *See Marvel*, 140 F.3d at 174-75. Congress provided no other way to replace debtor's management's control of the case with an independent fiduciary other than appointment of a trustee pursuant to 11 U.S.C. § 1104(a).

58.     It is undisputed that the former managing partner engaged in fraud prior to the Petition Date.   There are allegations that the current managing partner did so as well.   In any event, the current management partner permitted the Debtors' pre-petition operations to be conducted without sufficient oversight to prevent or discover the alleged fraud.

59.     It is unlikely that the current management will exercise its fiduciary duties to investigate and prosecute claims against themselves.   The Schedules reflect that Mark Dunaway and Stanton Dodson are the ultimate owners of the valuable debtors, and the limited partners who invested $4.7 million in the shell company are limited to sharing *pro rata* any recovery of the $1.1 million claim that the shell company has against the valuable Debtor.   The failure to transfer the assets "upon completion" as promised, or otherwise ensure that the limited partners got their bargained-for ownership interest in such assets, further demonstrates that existing management is improper for protecting their interests in these cases.

60.     Moreover, the Debtors are currently being run without experienced financial advisors, without sufficient oversight, and by an employee who does not have sufficient training to undertake the role of untangling the financial mess of these Debtors.

61.     Under these circumstances, pursuant to the plain language of 11 U.S.C.

§1104(a)(1): "…the court **shall** order the appointment of a trustee…". The appointment of a trustee herein is mandatory.

62. If the Court determines not to appoint a Chapter 11 Trustee, the U.S. Trustee requests that the Court appoint an examiner to conduct an investigation of the Debtors' structure and finances, as well as any claims the Debtors may have against Mark Dunaway, Stanton Dodson and Chris Dopson, pursuant to Section 1104(c).

63. Alternatively, in the absence of the appointment of a Chapter 11 Trustee or an examiner, these cases should be converted to cases under Chapter 7 pursuant to Section 1112. The Debtors employ only a handful of employees, and are currently operating at less than 20% capacity. West Dec. at ¶ 9. A Chapter 7 Trustee could undertake the necessary independent investigation into the Debtors' affairs, while potentially continuing to operate the Debtors, and liquidate the assets.

64. The U.S. Trustee reserves all rights, remedies and obligations to, amongst other things, complement, supplement, augment, alter, substitute and/or modify this Motion and to conduct any and all discovery as may be required or deemed necessary, and to assert such other grounds as may become apparent.

**CONCLUSION**

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order directing the appointment of a chapter 11 trustee, or in the alternative, for an order appointing an examiner or converting the cases to cases under Chapter 7, and for such other relief that the Court deems just, fair, and equitable.

Dated: August 5, 2015
Wilmington, Delaware

**Respectfully submitted**,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**REGION THREE**
By:/s/ Linda J. Casey
Linda J. Casey
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)
Linda.Casey@usdoj.gov