IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Citadel Energy Holdings, LLC, *et al.*[1]<br><br>Debtors. | Case No: 15-11322-KJC<br>Chapter 11<br><br>Jointly Administered<br><br>**Re: D.I. 76** |

**DEBTORS' OBJECTION TO THE UNITED STATES TRUSTEE'S
MOTION FOR THE APPOINTMENT OF A TRUSTEE, OR IN THE
ALTERNATIVE FOR THE APPOINTMENT OF AN EXAMINER OR THE
CONVERSION OF THE CASES TO CHAPTER 7**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby file this objection (the "Objection") to the United States Trustee's Motion for the Appointment of a Trustee, or in the Alternative for the Appointment of an Examiner or the Conversion of the Cases to Chapter 7 (the "Motion") and in support of the Objection the Debtors respectfully submit as follows:

**PRELIMINARY STATEMENT**

1. The United States Trustee ("UST") asserts that the appointment of a chapter 11 trustee or examiner is warranted in these cases because the current management of the Debtors is either corrupt or incompetent. The Debtors dispute the UST's contentions and submit that the UST has not offered, and cannot offer, any credible evidence of fraud, malfeasance or incompetence by the Debtors' current management. The allegation of fraud is supported only by general allegations the UST has taken from a recently filed complaint, despite the fact that the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Watford City Disposal Partners, LP (1520); Citadel Energy SWD Holdings, LLC (5266); Citadel Energy Holdings, LLC (5061). The Debtors' mailing address is PO Box 2127, Watford City, North Dakota 58854.

United States Trustee has been provided with extensive information on all post-petition financial transactions. In fact, the Debtors have been entirely forthcoming with the UST, the Securities and Exchange Commission, the Court, the Creditors' Committee and other interested parties throughout this process. The Debtors also disagree with the UST's second allegation; however, to address any concern that the UST may have with respect to the Debtors' ability to manage their affairs in these Chapter 11 proceedings the Debtors have retained a chief restructuring officer (the "CRO") and are putting in place an independent manager to provide the Debtors with experienced financial advice and to create additional financial controls. The Debtors believe that appointing either a trustee or an examiner in these cases will unnecessarily burden these estates without additional benefit, disrupt the progress that the Debtors have made to date in these proceedings, and impair the value of the Debtors' estates to the detriment of the Debtors' creditors.

**FACTUAL BACKGROUND**

2. The Debtors filed their respective petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 19, 2015. Since that time they have operated their businesses and managed their affairs as debtors-in-possession.

3. The United States Trustee has appointed an Official Committee of Unsecured Creditors (the "Committee") in these cases. The Committee is represented by counsel. The Committee is actively involved in these cases, has requested and received extensive information from the Debtors, and is working to ensure that these cases are properly managed and that the value of the Debtors' estates are maximized for the benefit of the Debtors' creditors.

4. Both the Committee and the UST (along with other parties) have made many requests for information from the Debtors and the Debtors have responded with thousands of pages of documents and information in addition to filing their schedules and statements of financial

affairs. The Debtors have also provided a representative to answer the UST's and Committee's questions at length at the initial debtor interviews, at informal meetings and at the meeting of creditors. The Debtors, under current management, have also been responsive and cooperative in the investigation by the Securities and Exchange Commission (the "SEC").

## BASIS FOR OBJECTION

5. There is a strong presumption against appointing a trustee and the party moving for such appointment, here the UST, has the burden of showing cause by clear and convincing evidence. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998). Appointment of a trustee is exceptional. *Id*. As a general matter the management of the debtor is most familiar with the debtor's operations and is "best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *Id.*, *quoting In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 524 (Bankr. E.D. N.Y. 1989). As set out below, the UST has utterly failed in his burden of providing clear and convincing evidence that there is cause to appoint a trustee for these cases.

6. There are two provisions setting forth when a trustee should be appointed. Section 1104(a)(1) of the Bankruptcy Code provides for appointment "for cause, including fraud, dishonestly, incompetence, or gross mismanagement… ." The UST's allegations generally go to this provision.[2] However, the UST has failed to provide clear and convincing evidence of fraud, dishonesty, incompetence or gross mismanagement by the current management of the Debtors.[3]

---

[2] The Trustee Motion also mentions Section 1104(a)(2), which focuses on the interests of creditors and equity security holders. However, the UST's allegations do not focus on the best interest of the creditors and, in fact, the Committee, who represents the interests of the creditors, has not offered any support of the Trustee Motion. Likewise, no equity interest holders have stated support.

[3] The UST asserts that prepetition mismanagement, fraud and dishonesty are sufficient to appoint a trustee. However, the cases which rely upon prepetition malfeasance in appointing a trustee are cases where the management during the

**There has been no showing that any current officer or manager of Debtors has engaged in fraud.**

7.      The UST has failed to meet his burden of establishing that the Debtors' current management has committed fraud or wrongdoing to warrant the appointment of a Chapter 11 Trustee.

8.      The Debtors do not deny that the former general partner and manager of the Debtors, Stanton Dodson ("Dodson"), mismanaged the Debtors prepetition and likely converted assets of the Debtors. Dodson was removed from the management of the Debtors prior to the filing of these bankruptcy cases and has not had access to the Debtors' post-petition bank accounts. The Debtors are currently working to correct and complete their books and records and other financial information so that they may understand the scope of Dodson's malfeasance with regards to the Debtor entities. The Debtors deny all allegations of fraud by the Debtors' current management.

9.      Following the removal of Dodson, the Debtors have been managed by Mark Dunaway. Although the UST has been provided with extensive information regarding the Debtors, the UST has presented no evidence showing fraud by Mr. Dunaway and there is no indication of post-petition misconduct by Mr. Dunaway. Instead, the UST relies on a derivative complaint filed recently in California (the "California Complaint") alleging a variety of claims against numerous parties, including Mr. Dunaway. Upon closer inspection, the California Complaint fails to allege even one specific statement made by Dunaway, much less the place and time of said statement, to whom it was made, and the factual basis establishing its falsity. Instead, the California Complaint collectively identifies numerous defendants, and vaguely alleges that fraudulent statements were

---

bankruptcy cases was identical to the prepetition bad actors. *See In re Sharon Steel Corp.*, 871 F. 2d 1217 (3d Cir. 1989); *In re Rivermeadows Associates, Ltd.*, 185 BR 615 (Bankr. D. Wyo. 1995). That is not the case here.

made by all of them. The UST's misplaced reliance on the conclusory allegations of the California Complaint falls woefully short of demonstrating any fraud or wrongdoing by Mr. Dunaway.

10. The Debtors admit that the California Complaint contains extensive and harmful (albeit conclusory) allegations against current management of the Debtors. However, that suit was filed shortly before the filing of these cases and consists of nothing but allegations, with discovery yet to commence. When carefully examined, the California complaint offers very little in the way of specific factual allegations against the Debtors' current management; rather, the California Complaint lumps the Debtors' current management and other parties in with the culpable parties.

**The Debtors have been cooperating fully with the United States Trustee, the Official Committee of Unsecured Creditors and the Securities and Exchange Commission and have fulfilled their duties as to filing and disclosure.**

11. These cases have been pending since June 19, 2015 and, since the filing, both the UST and the Committee have made numerous requests for information from the Debtors. The Debtors have complied with those requests and have turned over thousands of pages and tens of gigabytes of information to the Committee and the UST. The Debtors' representative has also made himself available for many hours of interviews by the UST as part of the initial debtor interview. The Debtors have cooperated completely with these investigations and requests for information. In fact much of the information relied upon by the UST in its motion was supplied directly by the Debtors.

12. The Debtors have also cooperated fully with the SEC in its investigation.

13. The Debtors have fulfilled their duties as debtors-in-possession by filing schedules, statements of financial affairs and monthly operating reports.

**The Debtors are seeking to retain a Chief Restructuring Officer who would report to an independent director.**

14. The second charge leveled by the UST is that the Debtors do not have sufficient financial knowledge to effectuate a turnaround of the company and lack adequate internal financial controls.

15. The Debtors recognize the value of expert financial advice in turning around a company. Therefore, the Debtors' have elected to retain Edward Gavin, CTP as Chief Restructuring Officer. The Committee supports the retention of Mr. Gavin as Chief Restructuring Officer. The application for authority to retain a Chief Restructuring Officer is pending before the Court.

16. Not only will the CRO provide the Debtors with necessary turnaround expertise, the CRO will maintain control over the Debtors' accounts, providing the internal controls desired by the UST.

17. Finally, the CRO will report to a newly appointed independent manager who will not answer to the Debtors' current management. This will mean that Debtors' actions in bankruptcy will be driven by independent parties, while Debtors also benefit from the knowledge and experience of their current management.

**The Debtors are actively pursuing reorganization and sale opportunities.**

18. While the chaos left by Dodson and the emergency nature of these filings have hindered the Debtors reorganization, the Debtors have actively sought out opportunities for reorganization both before and after the bankruptcy filing.

19. Currently the Debtors have met with several groups who have expressed interest in buying all, or substantially all, of the Debtors' assets. Several parties have executed confidentiality agreements and are conducting due diligence with respect to the Debtors' business.

20. The Debtors are also seeking out investors who may be willing to contribute funds to allow the Debtors to exploit their valuable "solids permit" that would allow the Debtors to handle the disposal of a wider array of oil extraction byproducts.

**The Debtors do not believe that appointment of a trustee or examiner or conversion to chapter 7 will be an efficient use of estate resources.**

21. The Debtors believe that in appointing a CRO and independent manager, the Debtors have taken steps to ensure that the estates' assets are sufficiently protected and that the Debtors have the benefit of experienced financial advice. As there is no evidence of fraud in these cases the appointment of a trustee or examiner will not add additional value. As a result the Debtors do not believe there is cause to appoint a trustee or examiner or convert these cases to cases under chapter 7.

WHEREFORE, the Debtors respectfully request that the Court (a) deny the Trustee Motion, and (b) grant to the Debtors such other and further relief as the Court may deem proper.

Dated: August 28, 2015
Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (No. 3933)
Ronald S. Gellert (No. 4259)
Emily K. Devan (No. 6104)
913 N. Market St., 10th Floor
Wilmington, Delaware 19801
Phone: (302) 425-5812
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com

*Attorneys for Debtors and Debtors-in-Possession*