**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Citadel Energy Holdings, LLC, <u>et al.</u>,[1] | ) | Case No. 15-11322 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Committee Objection Due: September 4, 2015 |
| | ) | Hearing Date: September 15, 2015 at 9:00 a.m. EDT |
| | ) | |
| | ) | Re: D.I. 76 and 121 |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF CITADEL ENERGY HOLDINGS, LLC, <u>ET AL.</u> TO THE
MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT
OF A TRUSTEE, OR IN THE ALTERNATIVE FOR THE APPOINTMENT OF
AN EXAMINER OR THE CONVERSION OF THE CASES TO CHAPTER 7**

The Official Committee of Unsecured Creditors of Citadel Energy Holdings, LLC, <u>et al.</u> (the "<u>Committee</u>"), by and through its proposed undersigned counsel, hereby submits this objection (the "<u>Objection</u>") to the Motion of the United States Trustee for the Appointment of a Trustee, or in the Alternative for the Appointment of an Examiner or the Conversion of the Cases to Chapter 7 (the "<u>Trustee Motion</u>") [D.I. 76] filed by Andrew R. Vara, Acting United States Trustee for Region Three (the "<u>U.S. Trustee</u>"). In support of this Objection, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Committee entered these bankruptcy cases with some of the same management competency concerns raised by the U.S. Trustee in the Trustee

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Citadel Energy Holdings, LLC (5061); Citadel Watford City Disposal Partners, LP (1520); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266) and Citadel Energy Services, LLC (7762). The Debtors' address is 502 3rd Ave. SW, Watford City, North Dakota 58854.

Motion.[2] The Committee was also focused on maximizing value to obtain recoveries for the general unsecured creditors. The Debtors responded readily to both of the Committee's concerns by putting in place certain management safeguards requested by the Committee, and by exploring a sale or other financial transaction that might permit a prompt exit from bankruptcy through a plan. Specifically, the Debtors engaged, subject to Court approval, Gavin/Solmonese LLC ("Gavin/Solmonese"), a firm with extensive accounting and restructuring experience as the Debtors' Chief Restructuring Officer (the "CRO"). Further, the Debtors have or shortly will appoint an independent manager (the "Independent Manager") at each of the debtor entities with sole authority over bankruptcy decisions.

        2.      The CRO has sterling qualifications and is, in the Committee's opinion, best positioned to assist the independent manager in managing the Debtors during these bankruptcy cases and to develop and execute, in consultation with the Committee, value maximizing strategies. The Trustee Motion should be denied because the Committee and the Debtors have implemented a solution that resolves all management and operational concerns raised by the U.S. Trustee. The appointment of a chapter 11 trustee is unnecessary, would delay further the Debtors' reorganization plans, and would be unnecessarily costly to the estates and the creditors that bear the burden of any additional expense.

---

[2] As the court noted in In re General Oil Distributors, Inc., 42 B.R. 402, 409 (Bankr. E.D.N.Y. 1984), most companies in bankruptcy have at least some degree of incompetence or mismanagement, but appointment of a trustee is meant to be the extraordinary exception rather than the rule.

## BACKGROUND

### A. Bankruptcy Court Proceedings

3. On June 19, 2015 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), commencing the above-captioned chapter 11 cases (the "Bankruptcy Cases"). The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On July 20, 2015, the United States Trustee for the District of Delaware (the "U.S. Trustee"), pursuant to Bankruptcy Code section 1102(a)(1), appointed the Committee. Thereafter, on July 22, 2015, the Committee selected Womble Carlyle Sandridge & Rice, LLP as its counsel in these chapter 11 cases, subject to Court approval.

5. No trustee or examiner has been appointed in the Bankruptcy Cases.

6. On July 28, 2015, the U.S. Trustee conducted the Bankruptcy Code section 341(a) meeting of creditors (the "341 Meeting"). The 341 Meeting was left open and was adjourned until a later date.

7. On August 5, 2015, the U.S. Trustee filed the Trustee Motion.

8. On August 28, 2015, the Debtors filed their objection to the Trustee Motion [D.I. 121].

9. On August 25, 2015, the Debtors filed their Application for an Order Authorizing and Approving the Employment of Gavin/Solmonese LLC as Chief

Restructuring Officer for the Debtors Nunc Pro Tunc to August 12, 2015 (the "Gavin/Solmonese Application") [D.I. 112]. The Gavin/Solmonese Application is scheduled to be heard on September 15, 2015, at the same hearing as the hearing on the Trustee Motion.

      10.    By the Gavin/Solmonese Application, the Debtors propose to grant broad authority to Gavin/Solmonese in these Bankruptcy Cases over bankruptcy related operational decisions, including, among other responsibilities:

    (a)    Day to day operational and financial management of the Debtors, including oversight of all the Debtors' financial activities;

    (b)    Negotiating and executing the Debtors' financial relationships; and

    (c)    Providing Gavin/Solmonese staff to render accounting, IT, and operational expertise and services.

Gavin/Solmonese Application, ¶ 15.

      11.    Under this proposed management structure, Gavin/Solmonese will report to an independent manager who will provide direction as provided for in each of the Debtors' governing agreements, as amended.

      12.    The Committee also is encouraged by recent steps the Debtors have undertaken to obtain debtor-in-possession financing and commence a sale process.

**B. State Court Litigation Alleging Fraud**

      13.    On June 11, 2015, Leland Properties, LLC et al. commenced litigation against various entities and individuals, including but not limited to debtor Citadel Energy SWD Holdings, LLC, Stanton Dodson, Mark Dunaway, and Chris Dopson in the Superior Court of the State of California for the County of Los Angele styled as Leland Properties, LLC et al. v. Citadel Energy Partners, LLC et al., Case No.

BC584818 (the "California Action"). The complaint (the "California Complaint") contains counts for breach of fiduciary duty, fraud, concealment, conversion, securities fraud, civil violations of 18 U.S.C. § 1961-1968 ("Civil RICO"), and negligence, and also seeks other declarative relief against various parties, including Messrs. Dodson, Dunaway, and Dopson.

14. On June 29, 2015, Mark Dunaway removed the California Action to the United States District Court for the Central District of California, where it now is pending under Case No. 15-cv-4891.

15. Upon information and belief, Stanton Dodson and Mark Dunaway are general partners and/or members of the Debtors.

16. Upon information and belief, Stanton Dodson no longer participates in the management of any of the Debtors, and has no signing authority over any of the Debtors' bank accounts.

17. Upon information and belief, Chris Dopson is the Director of Financial Affairs of the Debtors.

## ARGUMENT

### A. Applicable Legal Standard Regarding the Appointment of a Trustee

18. Section 1104(a) of the Bankruptcy Code authorizes the appointment of a trustee under two circumstances:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

19. "It is settled that the appointment of a trustee should be the exception, rather than the rule." In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3d Cir. 1989) (internal citations omitted); In re Marvel Enter. Grp., Inc., 140 F.3d 463, 471 (3d Cir. 1998). The "standard for § 1104 appointment is very high." Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 176 (2d Cir. 2005). Accordingly, the movant "must prove the need for a trustee by clear and convincing evidence." Sharon Steel, 871 F.2d at 1226; see also Marvel, 140 F.3d at 471 (same).

20. Moreover, there is "a strong presumption" against the appointment of a trustee. Marvel, 140 F.3d at 471. This "strong presumption" is based on the fact that there is no need for a trustee in most cases because the debtor-in-possession is already a fiduciary for the estate and has an obligation to refrain from acting in a manner that could damage the estate. See Marvel, 140 F.3d at 471. "The strong presumption also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization." Id.

21. Here, for the reasons stated below, the U.S. Trustee has failed to meet its burden of showing by clear and convincing evidence that a chapter 11 trustee should be appointed.

      **i.    The Appointment of a Trustee is Not Warranted Because the Alleged Prepetition Misconduct Cannot Reoccur and Will Not Take Place in Chapter 11.**

22. The U.S. Trustee argues that there is "cause" for the appointment of a trustee because the Debtors lacked the pre-petition "oversight to prevent or discover

6

the alleged fraud" in the California Complaint.  See Trustee Motion at ¶ 59 (Docket No. 76-3).  The U.S. Trustee also argues that a trustee should be appointed because it is "unlikely" that the current management of the Debtors (and presumably the managers of the Debtors) will fail to "exercise [their] fiduciary duties to investigate and prosecute claims against themselves."  Id. at ¶ 60.

23. The U.S. Trustee's arguments have been rendered moot by the recent actions of the Debtors.  The Debtors have hired an experienced and well-respected CRO to shepherd the Debtors through their Bankruptcy Cases, and are in the process of amending their governing agreements so that an independent manager will be solely responsible of all bankruptcy and restructuring decision making.

24. Indeed, because the Debtors are placing the power to make all bankruptcy and restructuring decisions with the independent manager, there is no longer any danger to the Debtors' estates that any negligent or fraudulent acts are being undertaken by the Debtors.  Accordingly, because the risks of negligence and fraud have been voluntarily ameliorated by the Debtors, "cause " under Bankruptcy Code section 1104(a) does not exist and there is no justification for the burden and expense of the appointment of a trustee.  See Kenneth N. Klee & K. John Shaffer, Creditors' Committees Under Chapter 11 of the Bankruptcy Code, 44 S.C. L. Rev. 995, 1045, 1049 (1993) (noting that "the incremental costs" of a chapter 11 trustee typically "outweigh[] the benefits" and "maximization of value rarely lies down this path").

25. Furthermore, the United States Court of Appeals for the Third Circuit has stated that there is a strong presumption against appointing an outside trustee because it is often unnecessary given that "[t]he debtor-in-possession is a fiduciary of the

7

creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization." Marvel, 140 F.3d at 471 (internal citations omitted).

26. Now, with the additional governance safeguards implemented by the Debtors, along with the preexisting fiduciary duties of the Debtors (as well as the Committee), the Trustee Motion should be denied because there is simply no need for a chapter 11 trustee.

27. Likewise, the mere speculation that a Debtors may fail to do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a chapter 11 case or justify the additional costs and attendant learning curve associated with appointment of a trustee. In re Sletteland, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (citations omitted); Ad Hoc Committee of Bondholders v. Citicorp Venture Capital Ltd. (In re Fairwood Corp.), Case No. 99 CIV. 3177 (HB), 2000 WL 264319, at *14–15 (S.D.N.Y. Mar. 9, 2000), aff'd, 242 F.3d 364 (2d Cir. 2001).

28. Additionally, although the California Complaint contains various allegations of fraud and misconduct, these allegations are strenuously disputed by the Debtors. In fact, the Debtors have attributed all of the wrongdoing alleged in the California Complaint to Stanton Dodson. Further, upon information and belief, the Debtors acted swiftly in limiting Mr. Dodson's power and access to accounts as soon as the Debtors became aware of Mr. Dodson's malfeasance. Even assuming the allegations in the California Complaint are true and could be proven by the U.S. Trustee, such misbehavior is unlikely to recur given the numerous safeguards that are now in place.

29. The Debtors, for all bankruptcy related matters, will be controlled solely by an experienced CRO and the independent manager. Moreover, any proposed dispositions of subsidiary assets by the Debtors will be subject to this Court's approval.

30. Accordingly, there is no more danger of misconduct here than there would be if a chapter 11 trustee were appointed.

### ii. The Debtors current management is not incompetent.

31. There is "a strong presumption" against the appointment of a trustee, which stems from the "debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization." Marvel, 140 F.3d at 471. Nonetheless, the U.S. Trustee argues that "the Debtors' are currently being run without experienced financial advisors, without sufficient oversight, and by an employee who does not have sufficient training to undertake the role of untangling the financial mess of these Debtors." See Trustee Motion at ¶ 60.

32. This statement is incorrect. The Debtors' retention of a CRO puts in place experienced financial advisors with the oversight of an independent manager. If the CRO's retention is approved by this Court, the Debtors' estates will have the benefit of an independent, knowledgeable, and fully engaged CRO who will provide a steady hand to the Debtors' restructuring efforts. The CRO also has the forensic accounting skills necessary to untangle and rebuild the Debtors' financials to allow the Debtors to undertake a sale process, and eventually propose a plan. Further, the Debtors are in the process of amending their by-laws so that all bankruptcy and restructuring decisions are solely the responsibility of an independent manager who will also have restructuring experience.

33. For these reasons, the appointment of a trustee is not warranted under Bankruptcy Code section 1104(a)(1) and the Trustee Motion should be denied.

### iii. Appointing a Trustee is Decidedly Not in the Best Interests of the Estates

34. Section 1104(a)(2) envisions a "flexible standard" for the appointment of a trustee when to do so would serve the "the interests of the creditors, equity security holders, and other interests of the estate." Sharon Steel, 871 F.2d at 1226; see also Marvel, 140 F.3d at 474; In re G-I Holdings, Inc., 385 F.3d 313, 320 (3d Cir. 2004) ("As Sharon Steel stated, the party asking for appointment of a trustee bears the burden of persuasion by clear and convincing evidence. This burden does not shrink or shift.").

35. In reconciling the "interests" standard with the "cause" standard, Collier notes:

> The "interests" standard may initially seem less stringent than the "cause" standard. After all, no showing of wrongful behavior on the part of management is required, as long as interested parties can show a meaningful benefit from the appointment of a trustee. However, it is important to remember that the "interests" standard requires a finding that appointment of a trustee would be in the interest of essentially all interested constituencies."

7 Collier on Bankruptcy ¶ 1104.02[d][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added).

36. The U.S. Trustee has not met its burden of proving by clear and convincing evidence that the appointment of a trustee is in the best interest of creditors.

37. Here, the Committee represents the unsecured creditor constituency, which is the largest financial stakeholder in these Bankruptcy Cases, and the Committee opposes the appointment of a trustee. The Committee has worked with the

Debtors to put in place appropriate managerial safeguards. The disruption that would accompany the appointment of a chapter 11 trustee likely will harm the unsecured creditors by diminishing any recovery that the unsecured creditors may hope to receive, all while providing little to no benefit to the other constituencies of these estates.

38. Accordingly, the interests of all constituencies weigh heavily against the appointment of a chapter 11 trustee.

### B. These Cases Should Not be Converted to Chapter 7

39. Bankruptcy Code section 1112(b) governs motions to covert. That section provides that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

40. In determining whether to covert a case, Bankruptcy Code section 1112(b) requires the Court to undertake a two-step process in which the Court first determines whether there is "cause" to convert or dismiss, and next decides whether appointment of a trustee, conversion, or dismissal furthers "the best interest of creditors and the estate."  See In re SGL Carbon Corp., 200 F.3d 154, 159 n. 8 (3d Cir. 1999); see also In re Lykes Bros. S.S. Co., Inc., 196 B.R. 586 (Bankr. M.D. Fla. 1996) ("This requirement is in the conjunctive, and it clearly is the burden of the Movant to prove both of these elements.").

41. Furthermore, under Bankruptcy Code section 1112(b)(2), a court must not convert a case to chapter 7 "if the court finds and specifically identifies unusual

circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor . . . establishes that — (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2).

42. Like a motion to appoint a trustee, when seeking conversion to chapter 7 under Bankruptcy Code section 1112, the movant is forced to carry a heavy burden in order for conversion to be ordered. "Conversion or dismissal . . . is a drastic measure . . . the harshness of conversion or dismissal mandates that it result only upon a strong evidentiary showing." In re Dark Horse Tavern, 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995).

43. In the Trustee Motion, the U.S. Trustee does not address the standard for conversion to chapter 7 provided by Bankruptcy Code section 1112 and fails to show how cause for conversion exists or how conversion would be in the best interests of the estates.

44. Furthermore, for the reasons stated supra in sections A(i)-A(iii), the Committee asserts that there is no cause to convert these Bankruptcy Cases to chapter 7, and even if such cause exists (which it does not), that converting these Bankruptcy Cases is not in the best interests of the creditors and these estates.

**RESERVATION OF RIGHTS**

45. Discovery in respect of the Trustee Motion is ongoing as of the time of the filing of this Objection. The Committee reserves its right to supplement this Objection following the completion of discovery.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court enter an order denying the Trustee Motion and granting such other and further relief as is just and proper under the circumstances. However, should the Court grant the Trustee Motion, the Committee respectfully requests that the U.S. Trustee be required to confer with the Committee regarding the selection of a chapter 11 trustee, and that such chapter 11 trustee be acceptable to the Committee.

Dated:  September 4, 2015                    **WOMBLE CARLYLE SANDRIDGE**
                                                                    **& RICE, LLP**

                                                                    */s/ Thomas M. Horan*
                                                                    Thomas M. Horan (Del. Bar No. 4641)
                                                                    Ericka F. Johnson (Del. Bar No. 5024)
                                                                    Nicholas T. Verna (Del. Bar No. 6082)
                                                                    222 Delaware Avenue, Suite 1501
                                                                    Wilmington, DE 19801
                                                                    Telephone:  (302) 252-4320
                                                                    Facsimile:  (302) 252-4330
                                                                    E-mail:  thoran@wcsr.com
                                                                    E-mail:  erjohnson@wcsr.com
                                                                    E-mail:  nverna@wcsr.com

                                                                    *Proposed Counsel to the Official Committee of Unsecured Creditors*