**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Citadel Energy Holdings, LLC, *et al*, | Case No. 15-11322 (KJC)<br>(Jointly Administered) |
| Debtors. | **Hearing Date: September 15, 2015 @ 9:00 a.m.** |
| | **Related to Dkt. No. 76** |

**REPLY OF THE UNITED STATES TRUSTEE ON HIS MOTION
FOR THE APPOINTMENT OF A TRUSTEE, OR IN THE ALTERNATIVE
FOR THE APPOINTMENT OF AN EXAMINER OR THE
<u>CONVERSION OF THE CASES TO CHAPTER 7</u>**

Andrew R. Vara, Acting United States Trustee for Region Three ("U.S. Trustee"),

through his counsel, files this Reply to the objections of the Debtors and the Official Committee

of Unsecured Creditors to the U.S. Trustee's Motion for the Appointment of a Trustee, or in the

Alternative for the Appointment of an Examiner or the Conversion of the Cases to Chapter 7,

pursuant to 11 U.S.C. §1104(a) (1) and 1104(e) (the "Trustee Motion")[Dkt. No. 76]

**I.      PRELIMINARY STATEMENT**

1.      In their Objection to the Trustee Motion, the Debtors assert that the U.S. Trustee

cannot offer any credible evidence of fraud, malfeasance or incompetence by the Debtors' current

management.   This argument is based on two presumptions: (1) that Mark Dunaway, the person

the Debtors allege is "current management," has not engaged in any fraud, dishonesty,

incompetence or gross mismanagement, and (2) that Stanton Dodson, a person the Debtors admit

"mismanaged the Debtors prepetition and likely converted assets of the Debtors," has been

"removed from the management of the Debtors."   *See* Debtors' Objection to Trustee Motion, Dkt.

121, ¶ 8.   However, both of these presumptions are wrong.

2.      As to the first of the Debtors' presumptions, the following are among the facts that

demonstrate that Mark Dunaway has, at the very least, grossly mismanaged these Debtors:

      a.  Mr. Dunaway has wholly ignored basic corporate governance, and demonstrated that he does not have an adequate understanding of what such governance entails, or an understanding of the ownership structure of the Debtors and their affiliated entities, or who controls each of them;

      b.  Despite having concerns about Stanton Dodson from at least December 2014 (and likely earlier), and despite these cases having been in bankruptcy for more than two months, Mr. Dunaway has still not recovered the Debtors' books and records or tax returns from their accountants;

      c.  Mr. Dunaway has filed false statements with this Court that he should have known were false; and

      d.  After learning of Stanton Dodson's conversion of assets, Mr. Dunaway executed a sale and transfer of substantially all of the only operating assets of any of the Debtors to a third party, without consideration, without a written obligation of the purchaser to assume the companies' debts, and without even knowing what, if any, interest the purchaser would grant to the limited partners who invested their money for the acquisition and development of the assets being sold.[1]

      3.     As to the second of the Debtors' presumptions, although the Debtors have described Stanton Dodson in various pleadings as the Debtors' "former general partner" and asserted that he has been removed from the management of the Debtors prior to the filing of these bankruptcy cases, that does not in fact appear to be the case.   Mr. Dunaway testified that the limited partners of the only Debtor that is actually a partnership never even held a vote as to whether to remove its general partner (which is controlled by Stanton Dodson).   Nor has there

---

[1]      Mr. Dunaway testified at deposition that the sale of the operating assets was unwound, but the Debtors have not identified any writing documenting such unwinding.

been produced to the U.S. Trustee any evidence that Stanton Dodson was removed from any Manager or Member position in the other four debtors, except for one letter that purported to remove him as "Manager" while failing to comply with the procedure required for such removal in that Debtor's corporate governance documents.

4.      Moreover, according to the Debtors' own books and records, Mr. Dodson is the 100% owner of one of the Debtors, which in turn owns 100% of another Debtor, and is the *only* Manager (as Manager of the General Partner) of a third Debtor.   Regardless of when Stanton Dodson last communicated with Mr. Dunaway and the few employees remaining with the Debtors, it appears that at least three of the Debtors are completely controlled by him, and he retains his rights as both Member and Manager in all of the Debtors.

5.      Finally, the Debtors and the Committee assert that, regardless of what the management of the Debtors has done, the concerns expressed by the U.S. Trustee in his motion to appoint a chapter 11 trustee are addressed by the Debtors' application to retain a chief restructuring officer.   This too is wrong.

## II.     FACTUAL BACKGROUND

6.      At trial, the U.S. Trustee will provide an evidentiary record of false statements in court filings and other records, gross mismanagement, incompetence and dishonesty on the part of the current management of the Debtors, including evidence of the following.

### The Debtors' Lacked Financial Oversight or Controls
### To Prevent Misappropriation of Their Funds

7.      The Debtors consist of four limited liability companies and one partnership.   Mark Dunaway acted as the functional CEO of the Debtors and related companies.   He was responsible for the Debtors' operations, and was the person most frequently in North Dakota.

8.      Stanton Dodson acted as the functional CFO of the Debtors and related companies. Stanton Dodson maintained offices in Los Angeles, California.    All "back office" work was conducted in Los Angeles. The Debtors do not dispute that he should be removed from Debtors' management due to his mismanagement and likely conversion of assets of the Debtors.

9.      Between 2012 through March 2015, Mark Dunaway never requested access to or reviewed any bank account statements for the Debtors or their related companies.

10.      The Debtors did not have proper financial controls to prevent theft of funds. Money could be transferred by wire with the signature of a single person.    Books and records were not kept contemporaneously.    Mark Dunaway did not review financials or other information, but rather relied upon the companies' controller.[2]

### *The Debtors Did Not Follow Proper Corporate Governance*

11.      The Debtors have failed to maintain proper books and records, including failing to execute and maintain basic corporate governance documents such as operating agreements.

12.      Mark Dunaway signed a petition causing the bankruptcy filing of an entity stated to be Citadel Energy Holdings, LLC, a Delaware limited liability company (alleging it to be the 95% owner of debtor Pembroke Fields, LLC ("Pembroke")). There is nothing in the Debtors' books and records produced to the U.S. Trustee to establish that this is an entity related to any of the Debtors, their insiders or affiliates.    This entity was formed four to five years before Stanton Dodson and Mark Dunaway commenced business in North Dakota, and was cancelled by a person who is unknown to the Debtors.    The Debtors' books and records produced to the U.S. Trustee indicate that the 95% owner of Debtor Pembroke is Citadel Holdings, LLC, a North Dakota limited liability

---

2      It was not clear from Mr. Dunaway's deposition testimony who the controller was or whether he or she is still employed by the Debtors.

company, which is not a debtor in these cases.

13.     Mark Dunaway signed a petition causing the bankruptcy filing of Citadel Energy

Services, LLC ("Citadel Services").    The Debtors' corporate records produced to the U.S. Trustee

establish that Stanton Dodson is the 100% owner of this entity and its only Manager.    Citadel

Services is the 100% owner of Debtor Citadel Energy SWD Holdings, LLC ("SWD Holdings"),

which in turn is the general partner of Debtor Citadel Watford City Disposal Partners, LP ("Citadel

Watford Partnership").

14.     Mr. Dunaway's deposition testimony indicated that he believed that there was an

oral agreement whereby Stanton Dodson granted a 45% ownership in Citadel Services to him.    He

also testified that an unknown percentage of ownership was granted to three other persons,

Nicholas Temple, Eric Holomon and Louis Bridges.    Nevertheless, he had previously signed the

List of Equity Security Holders Citadel Services, as well as the Corporate Ownership Statement

and the Schedules and Statement of Financial Affairs of that Debtor, in which he certified that such

company is owned 50% by him, and 50% by Stanton Dodson.

15.     The Debtors have asserted that Citadel Services provides management services to

Pembroke.    The only management agreement in the Debtors' books and records is between

Pembroke and Citadel Management Services, LLC, a North Dakota limited liability company.

This agreement is signed by Mark Dunaway on behalf of both Pembroke and Citadel Management

Services, LLC.    The is no evidence that an entity named Citadel Management Services, LLC was

ever formed in North Dakota.    There is no assignment of the management services agreement

from Citadel Management Services, LLC to Citadel Services.

16.     The Debtors' books and records do not contain any operating agreement for SWD

5

Holdings.

17.     Despite numerous statements in pleadings and in testimony regarding the removal of Stanton Dodson as "general partner" and Mark Dunaway being the "general partner" of the Debtors, there is only one debtor that is a partnership, Citadel Watford Partnership.   Its general partner is SWD Holdings, which is 100% owned by Citadel Services, which is 100% owned by Stanton Dodson.   There has been no vote by the partners to remove its general partner.   The partnership agreement makes clear that Stanton Dodson is the only Manager of Citadel Watford Partnership.

18.     Mark Dunaway signed a State of Delaware Certificate of Limited Partnership, which was filed with the Delaware Secretary of State.   In that certificate, Mark Dunaway represented that the general partner of Citadel Watford Partnership was Citadel Energy Partners, LLC.   That document was filed with the Secretary of State just three days before Mr. Dunaway signed the partnership agreement stating that SWD Holdings is the general partner of Citadel Watford Partnership.   That certificate has not been amended.

### Mark Dunaway's Engaged in Improper Actions
### After Discovering Stanton Dodson's Actions

19.     After the limited partners uncovered Stanton Dodson's misappropriation of funds, Mark Dunaway participated in an improper transaction involving the Debtor Pembroke.

20.     On May 1, 2015, Mark Dunaway signed documents that appear to sell, transfer and assign substantially all of the operating assets of Debtor Pembroke to North Dakota Water Partners, LLC.

21.     North Dakota Water Partners, LLC is a company formed by three of the approximately 41 limited partners of Citadel Watford Partnership.

22.    There was no compensation paid to Pembroke for the transfer of assets, and there was no written document obligating the transferee to assume any of the obligations of Pembroke.

23.    The lease held by Pembroke for the land upon which the salt water disposal facility is located includes a non-assignability clause.   Mark Dunaway assigned this lease to North Dakota Water Partners, LLC without obtaining the approval of the landlord.

24.    Mark Dunaway testified that he did not know how North Dakota Water Partners, LLC would treat the limited partners of Citadel Watford Partnership (the persons who invested their money for the acquisition and development of the Pembroke assets).

25.    Mark Dunaway testified that, after the Securities and Exchange Commission started investigating the Debtors, the owners of North Dakota Water Partners "begged" the Debtors to take the assets of Pembroke back.   He testified that the assets were transferred back, and that the transfer was done in writing.   No writing has been provided to the U.S. Trustee establishing that North Dakota Water Partners has returned any of the assets to Pembroke, or that the sale of such assets was rescinded.   It is therefore unclear if Debtor Pembroke, or any of the Debtors, actually owns any operating assets.

### *The Debtors have failed to properly remove Stanton Dodson*

26.    Based on the information provided by the Debtors to the U.S. Trustee, Stanton Dodson has not been removed as a Member of any of the Debtor entities in which he has a direct membership interest, and he retains all such membership rights.

27.    Stanton Dodson has not been removed from the board of directors of Citadel Services, which is the only Debtor with a board of directors.

28.    SWD Holdings, which is 100% owned by Citadel Services, which is turn is 100%

owned by Stanton Dodson, remains the General Partner of Citadel Watford Partnership, and

Stanton Dodson has primary signatory power for that partnership.

29.    Stanton Dodson has not been removed as the Manager of any of the Debtors.

30.    An attempt to remove Stanton Dodson as Manager of Pembroke was made, but did

not comply with the requirements of § 5.08 of the Pembroke operating agreement to remove a

Manager, as such removal requires unanimous agreement of all Members of Pembroke.

31.    The U.S. Trustee acknowledges that the Debtors have repeatedly asserted that

Stanton Dodson has not been actively involved with the Debtors since March of this year.

However, the corporate documents produced to the U.S. Trustee unambiguously establish that

Stanton Dodson retains his management and ownership rights in all the Debtors.

### *Mark Dunaway has signed inaccurate pleadings in this Court*

32.    Mark Dunaway signed the petitions on behalf of each debtor, which included

corporate resolutions stating that, for each of the corporate debtors, the members unanimously

elected to file for bankruptcy protection.   This is untrue.   As to Citadel Watford Partnership, he

signed as general partner, which he is not, and certified that he, as Manager, elected to file

bankruptcy.   There is no corporate document appointing him Manager of Citadel Watford

Partnership.   Instead, the partnership agreement reflects that Stanton Dodson, through SWD

Holdings, is the Manager of Citadel Watford Partnership.

33.    Mark Dunaway signed the Schedules and Statement of Financial Affairs for Citadel

Services.   These included numerous inaccuracies and omissions, such as: (a) listing the

membership interest of Stanton Dodson and Mark Dunaway as 50/50 owners, when it is actually

owned 100% by Stanton Dodson, and including inaccurate, contradictory and misleading

corporate structure charts; (b) failing to list payments to insiders during the one year prior to the

petition date; (c) failing to include himself as a co-debtor for promissory notes signed solely by

him for funds used to fund the Debtors' payroll; and (d) including debt incurred by North Dakota

Water Partners, not the Debtors, during the time period that North Dakota Water Partners was

operating the assets.

34.     Mark Dunaway signed the schedules and statements of financial affairs for

Pembroke, which included the following inaccurate or incomplete information:   (a) failing to list

the revenue sharing agreement required to be signed by the private placement memorandum of

Pembroke; (b) including no information regarding transfers to insiders during the one year

preceding the petition date; and (c) failing to include, as unsecured claims, loans made by certain

persons to the Debtors prior to the petition date, which were subsequently memorialized in

writings by Mark Dunaway dated after the petition date.

## IV.    ARGUMENT

**The Debtors' Pattern of Misrepresentations, Misappropriation of Funds, Gross Mismanagement and Incompetence by Existing Management Require the Appointment of a Chapter 11 Trustee.**

35.     Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's

business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. §

1104(a)(1). *See, e.g., In re Sharon Steel Corp.,* 871 F.2d 1217 (3d Cir. 1989); *In re Colby*

*Construction Corp.*, 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985).   The determination of

whether cause exists must be taken on a case by case basis, taking into account all relevant

factors.   *Sharon Steel*, 871 F.2d at 1225.   Pre-petition conduct alone may provide the basis for

a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.,* 185 B.R. 615, 619 (Bankr. D.

Wyo. 1995).[3]

36.    Here, it is undisputed that Stanton Dodson misappropriated Debtor funds prior to the Petition Date.   The only dispute is whether he has been "removed" from management.   His mere failure to have recently participated in management is insufficient.   Stanton Dodson remains a member of the board of directors for Citadel Services, retains his direct or indirect ownership interest in all of the debtors (and therefore the right to vote on certain corporate actions, including sales), and remains a Manager of at least four, if not all five, of the Debtors.

37.    Mark Dunaway has also grossly mismanaged these Debtors – signing court documents with false information, filing bankruptcy for an entity that no longer exists and likely has no connection to the Debtor entities, signing corporate formation documents with false information, failing to maintain executed corporate governance documents, failing to review financial or bank account statements, and failing to follow basic rules of corporate governance. In addition, after learning of Stanton Dodson's conversion of Debtor funds, Mark Dunaway transferred substantially all of the assets of the Debtor Pembroke to a third party, for no consideration, without also ensuring the assumption of debt, and without any guarantees that the limited partners who funded the venture would be treated fairly in the new entity.

38.    Mr. Dunaway has also failed to act expeditiously to recover the Debtors' books and records, even though it has been nine months since he first realized that Stanton Dodson was

---

[3] The Debtors and Committee urge the "clear and convincing" evidence standard be used, citing *In re G-1 Holdings, Inc.,* 385 F.3d 313 (3d Cir. 2004).   However, in light of Supreme Court precedent and the addition of §1104(e) to the Bankruptcy Code, the better view is that the appropriate burden of proof should be the "preponderance of the evidence."   *See Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991)).

engaging in wrongful activities, six months since he allegedly removed him from power, and more than two months since the bankruptcy filing.

39.    These failures are more than simple mistakes.   The Debtors are allegedly undertaking a sale process.   However, the status of the Debtors' corporate records, including fully executed documents transferring all of the assets of Debtor Pembroke with no evidence of rescission, raises serious questions about the ability of the Debtors, under current management or otherwise, to complete a sale.

40.    The only way to ensure that these bankruptcy cases are handled effectively, expeditiously, and in the best interest of creditors, is to remove current management and put in their place a trustee with full statutory authority to manage these Debtors.

41.     In their objection to the Trustee Motion, the Debtors assert that they have retained a chief restructuring officer ("CRO"), Gavin/Solmonese, "and are putting in place an independent manager to provide the debtors with experienced financial advice and to create financial controls." Dkt. No. 121, ¶ 1.   The Debtors' objection indicates their belief that the retention of such CRO and independent manager should address the concerns expressed by the U.S. Trustee in the Trustee Motion.

42.    The U.S. Trustee believes the evidence will show that the Debtors' corporate governance documents do not allow them to retain either a CRO or a manager without the consent of Stanton Dodson, as detailed more fully in the U.S. Trustee's Amended Objection to the Application of the Debtors for an Order Authorizing and Approving the Employment of Gavin/Solmonese LLC as the Chief Restructuring Officer for the Debtors Nunc Pro Tunc to August 12, 2015")[Dkt. No. 142] (the "CRO Objection").   Even if the Debtors were able to do so,

however, a CRO is not the equivalent of a chapter 11 trustee.

43.     In its decision in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d

Cir. 1998), the Third Circuit quoted the following passage approvingly in affirming the

appointment of a Chapter 11 trustee:

> The willingness of Congress to leave a debtor-in-possession is premised on an
> expectation that current management can be depended upon to carry out the
> fiduciary responsibilities of a trustee.   And if the debtor-in-possession defaults in
> this respect, Section 1104(a)(1) ***commands*** that the stewardship of the
> reorganization effort must be turned over to an ***independent trustee***.

*Id*. (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989))

(emphasis added).

44.     The Third Circuit further stated that appointment of a trustee is mandatory if

cause is found under 11 U.S.C. § 1104(a)(1), and the district court's appointment of a trustee,

rather than an examiner, was not an abuse of discretion under subsection (a)(2).   *See Marvel*,

140 F.3d at 475.

45.     Whatever commonalities they share, the roles, powers and obligations of a CRO

and a chapter 11 trustee are neither identical nor interchangeable.   A CRO *serves* a

debtor-in-possession as an executive officer, subject to the direction of its governing body,

accountable to its governing body, and subject to dismissal at the will of its governing body.   A

chapter 11 trustee *administers* a debtor's estate after the Court has found cause to dispossess the

debtor, and is not subject to the direction of a debtor's governing body.

46.     That the CRO in these cases would be serving the existing management of the

Debtors can be seen by the CRO's engagement letter, which provides that Gavin/Solmonese "will

report to Client's Board of Directors or Members, whose names and contact information are listed

on Exhibit A attached hereto, with daily contact being Mark Christopher Dopson, Director of

Operations or his assigns or designees." Dkt. No. 112-2, § II. While the Engagement Letter did

not attach any exhibit, the Members of all of the Debtors that are LLCs consist of Stanton Dodson

and Mark Dunaway (and as to Debtor Citadel Services, *just* Stanton Dodson), or are entities owned

and controlled by Stanton Dodson, or by him and Mark Dunaway. Stanton Dodson and Mark

Dunaway are also two of the four board members of the one Debtor that has a board (Citadel

Services). The one debtor that is a partnership does not have Members or a board, and presumably

the CRO would report to its General Partner, who is controlled by Stanton Dodson.

47.    The CRO's abilities to act are further constricted by the provision in the

Engagement Letter specifying that the CRO shall not have any "authority to enter into any contract

or to pursue a course of action that requires the approval of the Board of Directors or Members of

[the Debtors] without having first obtained such approval." Dkt. No. 112-2, I.D. In fact, at his

deposition, Mr. Dunaway testified that he expected to continue to be able to vote on actions of the

Debtors after the appointment of a CRO.

48.    When "cause" exists for appointment of a Chapter 11 trustee, Congress has

established only one remedy that can displace management while allowing the case to remain in

Chapter 11 – the appointment of a trustee pursuant to 11 U.S.C. Section 1104(a). Courts must

be faithful to the plain meaning of the Bankruptcy Code's provisions, as drafted by Congress, and

read them narrowly. *See, e.g., Lamie v. United States Trustee,* 540 U.S. 526, 533 (2004) (strictly

interpreting 11 U.S.C. Section 330(a)(1)).

49.    There is no "quasi-trustee" provision in the Code, and Congress has provided for no

such entity. Indeed, Congress has specifically barred bankruptcy courts from appointing

receivers under section 105(b) of the Code. *See In re Casco Bay Lines, Inc.,* 17 B.R. 946, 952

13

(B.A.P. 1st Cir. 1982)(holding that bankruptcy court originally presiding over the matter had no

authority to remove officers and agents of debtor and replace them with "new management";

rather, once the court "removed the debtor's agents from control, it had no alternative but to

authorized those agents to be replaced with a trustee.")   Any such alternative remedy would

nullify the mandatory nature of trustee appointments as expressed in Section 1104(a).   *See* H.R.

Rep. No. 95-595, 95th Cong., 1st Sess. 402 (1977).

50.     That Gavin/Solmonese would act as a quasi-trustee or receiver is shown by the

testimony of Edward T. Gavin at his deposition that he intended to take the same actions he

believes a chapter 11 trustee would take in these cases.   He further testified that the main

difference he saw between himself and a chapter 11 trustee is that he believed he would be less

costly, despite the fact that, in addition to the standard hourly rates Gavin/Solmonese would charge

the estates, it will also seek three different kinds of success fees.

51.     Whether denominated as CRO, receiver, quasi-trustee, responsible officer or

otherwise, Gavin/Solmonese's proposed functions, duties and obligations as described in the CRO

Motion cannot duplicate those of a Chapter 11 trustee, because the CRO would have only the

rights, powers, functions and duties enumerated for a debtor-in-possession in Section 1107(a):

> Subject to limitations that the court may prescribe, a debtor-in-possession
> has all of the rights (other than the right to compensation) and powers of,
> and is required to perform all of the functions and duties of a Chapter 11
> trustee, "*except the duties specified in sections 1106(a)(2), (3), and (4)of
> this title*."

11 U.S.C. § 1107(a) (emphasis added).

52.     The duties of a Chapter 11 trustee specified in Section 1106(a)(3) and (4) – which a

debtor-in-possession **has no statutory duty to perform** – are as follows:

14

(3) except to the extent the court orders otherwise, ***investigate the acts, conduct, assets, liabilities, and financial condition of the debtor,*** the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; [and]

(4) As soon as practicable---

(A)  file a statement of any investigation conducted under paragraph (3) of this subsection, including any facts ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B)  transmit a copy of a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.

11 U.S.C. §§ 1106(a)(3) and (4) (emphasis added).

53.     Thus, in a case burdened with current management's misrepresentations, misappropriation of funds, gross mismanagement and incompetence, the CRO, whom the Debtors promotes as an adequate substitute for a Chapter 11 trustee, would have no statutory obligation to investigate the actions of the Debtors' management. In fact, the list of services to be rendered by Gavin/Solmonese to the Debtors, as set forth in the Engagement Letter, do not specify conducting any type of investigation of claims that the Debtors may have against their current (or former, to the degree there are any) Managers, Members, directors or owners. At his deposition, Mr. Gavin testified that he intended to conduct such an investigation, and believes it would be covered by the catch-all services provisions of the Engagement Letter.

54.     That the CRO may have the option to undertake an investigation into the Debtors' management is not the same thing as being statutorily mandated to do so, as is the case with a chapter 11 trustee.   Moreover, the CRO would be investigating the very people that the Debtors'

corporate governance documents and the Engagement Letter require him to report to, and from which he is required to get authorization to undertake certain actions.

55.    Even assuming the CRO undertook an investigation, "[n]o matter how thoroughly or fairly [the CRO] conducted the investigation, the question will always linger whether [he] held back, or failed to bite the hand that feeds [him] quite as hard as the circumstances warranted."  *In re Sunbum5 Enterprises,* LLC, 2011 WL 4529648 at *7 (M.D. Fla. September 30, 2011), *quoting In re Granite Partners, L.P.*, 219 B.R. 22, 38 (Bankr. S.D.N.Y. 1998).

56.    While the Debtors have asserted that they intend to retain an "independent manager," the evidence will show that, under the Debtors corporate governance documents, they would not have the authority to do so without the consent of Stanton Dodson.   Moreover, even if the Debtors could hire such a manager without Stanton Dodson's consent, pursuant to the corporate governance documents, such independent manager would not supplant the Debtors' exiting Managers, Members, board members (as to Citadel Services) or General Partner (as to Citadel Watford Partnership), or deprive those persons or entities of any of their voting rights. Rather, the "independent manager" would be one of two or three Managers, the others being just Stanton Dodson (with respect to Citadel Services and SWD Holdings) or Stanton Dodson and Mark Dunaway (with respect to Pembroke and Citadel Energy Holdings, LLC, if the latter Debtor still exists).   If the independent manager was elected to the board of directors of the one Debtor with a board (Citadel Services), that director would join the other four board members, two of which are Stanton Dodson and Mark Dunaway.   It is not clear how an "independent manager" would interface with the General Partner of Citadel Watford Partnership, which General Partner appears to be managed and controlled solely by Stanton Dodson.

57.    Unlike Gavin/Solmonese, a chapter 11 trustee would have autonomy.   He or she would neither have to report to the Debtors' management, nor get authority from them to pursue any course of action.   And unlike Gavin/Solmonese, a chapter 11 trustee will be truly independent, with no ties to any party in interest in these cases.   Gavin/Solmonese was first retained in these cases as financial advisor to the Committee of Unsecured Creditors, which Committee was a proponent of Gavin/Solmonese being retained as CRO by the Debtors.   This is a significant fact, as the rights of the unsecured creditors in these cases are likely to conflict to some degree with those of the limited partners who are equity holders of Debtor Citadel Watford Partnership.

58.    In any event, a CRO and an "independent manager" are not a substitute for a chapter 11 trustee.   As recognized by the Bankruptcy Court for the Southern District of New York in *In re Adelphia Comm. Corp.*, 336 B.R. 610 (Bankr. S.D.N.Y. 2006), section 1104 of the Code calls for only two kinds of fiduciaries—trustees and examiners.   *Id*. at 664.   In that case, the court rebuffed efforts to have the court rely on §105(a) to appoint a nontrustee fiduciary.   The court found that the movant had not shown grounds for a trustee appointment, and had not sought an examiner appointment.   The court held that "[a]ppointing a trustee equivalent, under these circumstances, would be doing exactly what the Second Circuit told the lower courts *not* to do: using section 105(a) 'to create substantive rights that are otherwise unavailable under applicable law' and to 'invent remedies that overstep statutory limitations.'" *Id*. (footnotes omitted) (emphasis in original).[4]

---

4    While U.S. Court of Appeals for the Seventh Circuit in *In re Gaslight Club Inc.*, 782 F.2d 767 (7th Cir. 1986), reached a different result, in that case all parties in interest, including the U.S. Trustee, consented to the appointment of a responsible person.   In addition, the decision affirmed the denial of a

59.     The court in *Adelphia* also extensively analyzed § 1107(a) and declined to rely on that statute as a legal basis to circumvent § 1104(a) and to appoint non-statutory fiduciaries.   The court observed that "the circumstances under which a bankruptcy court exercises its discretion to prescribe conditions and limitations on normal debtor in possession status should be relatively limited, and that the court's power to prescribe additional conditions and limitations restricting normal debtor in possession rights and powers should be exercised with restraint."   *Adelphia,* 336 B.R. at 665.   The court expressed considerable doubt over whether § 1107(a) may be read as a license for a court to circumvent or displace more specific sections of the Code any more than § 105(a) may. *Id.*   The court concluded that it might be "altogether forbidden" from using § 1107(a) to impose limitations on the rights of a debtor in possession that circumvented other sections of the Bankruptcy Code.   *Id.* at 666.

60.     Similarly, in *In re SunCruz Casinos*, LLC, 298 B.R. 821, 832 (Bankr. S.D. Fla. 2003), the court granted a motion to appoint chapter 11 trustee, rejecting the request of committee of unsecured creditors to appoint a responsible person instead.   The court held that, "[th]e Bankruptcy Code expressly provides for appointment of a trustee when a debtor's management is replaced. The Code does not contemplate appointment of a 'Responsible Person' to perform the duties of a trustee."   *Id.* at 832.

61.     When cause is demonstrated under Section 1104(a), as the U.S. Trustee believes will be established at trial, the appointment of a Chapter 11 trustee is the appropriate – and

---

motion of the majority shareholder, who had initially consented to the appointment, to reappoint himself a "person in control" of the debtor, or to appoint a trustee, after the responsible person had terminated the shareholder from his position as president.   The Court indicted that it "would certainly question recourse to the present procedure as a means generally to avoid the appointment of a trustee. But we think the peculiar circumstances of the case before us as well as the consent on all sides to the procedure followed make this case different."   *Id*. at 772.

required – remedy.    The management of the Debtors should not be permitted to select their own quasi-trustee under the guise of a CRO to avoid being dispossessed, thereby nullifying section 1104(a) of the Bankruptcy Code.

WHEREFORE the U.S. Trustee requests that this Court enter an order directing the appointment of a chapter 11 trustee, or in the alternative, for an order appointing an examiner or converting the cases to cases under Chapter 7, and for such other relief that the Court deems just, fair, and equitable.

Dated: September 11, 2015
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**Region 3**

By:  */s/ Linda Casey*
      */s/ Juliet Sarkessian*
      Linda Casey, Esquire
      Juliet Sarkessian, Esquire
      Trial Attorneys
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox 35
      Wilmington, DE 19801
      (302) 573-6491
      (302) 573-6497 (Fax)
      Linda.Casey@usdoj.gov
      Juliet.M.Sarkessian@usdoj.gov