## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Citadel Energy Holdings, LLC, *et al*, | Case No. 15-11322(KJC) (Jointly Administered) |
| Debtors. | **Hearing Date: September 15, 2015** |

### JOINT PRE-TRIAL MEMORANDUM REGARDING THE MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT OF A TRUSTEE, OR IN THE ALTERNATIVE FOR THE APPOINTMENT OF AN EXAMINER OR THE CONVERSION OF THE CASES TO CHAPTER 7 (D.E. 76)

The Movant, Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), the debtors Citadel Energy Holdings, LLC, Pembroke Fields, LLC ("Pembroke"), Citadel Energy Services, LLC ("Citadel Services"), Citadel Energy SWD Holdings, LLC ("SWD Holdings") and Citadel Watford City Disposal Partners, LP (individually, "Citadel Watford Partnership," and together with Citadel Energy Holdings, LLC, Pembroke, Citadel Services and SWD Holdings, the "Debtors"), by and through undersigned counsel, hereby submit this Joint Pretrial Memorandum (the "Joint Pretrial Memorandum"), in compliance with the Court's General Order Re: Pretrial Procedures In Adversary Proceedings, regarding the *Motion Of The United States Trustee For The Appointment Of A Trustee, Or In The Alternative For The Appointment Of An Examiner Or The Conversion Of The Cases To Chapter 7* [Case No. 15-11322, D.E. 76] (the "Trustee Motion"). The Debtors, the U.S. Trustee and the Committee are sometimes collectively referred to as the "Parties." The Parties reserve the right to supplement the Joint Pretrial Memorandum. In support of this Joint Pretrial Memorandum, the Parties respectfully represent as follows:

## I.    BASIS OF JURISDICTION

1.      This Court has jurisdiction over the Trustee Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core matter under 28 U.S.C. § 157(b)(2).

## II.    STATEMENT OF UNCONTESTED AND DISPUTED FACTS (DISPUTED FACTS IN BOLD)

### A.    BACKGROUND OF DEBTORS AND RELATED ENTITIES

1.      Sometime in 2012 or earlier J. Stanton Dodson was attempting to attract investors to buyout a water business opportunity on the Fort Berthold Indian Reservation in North Dakota (the "Fort Berthold Business").

2.      In the late summer or early fall 2012, Mark Dunaway and J. Stanton Dodson first met when they were introduced by an attorney at Womble, Carlyle, Sandridge & Rice, LLP, who was an attorney friend of Mark Dunaway.

3.      The purpose of this introduction was to see if Mark Dunaway could assist Stanton Dodson to review some aerospace service companies for a possible investment.  Mark Dunaway decided not to invest in the aerospace companies with Stanton Dodson.

4.      In or about September 2012, Stanton Dodson contacted Mark Dunaway again, this time to discuss the above-referenced potential business opportunities in North Dakota

5.      After conducting some diligence on Stanton Dodson, Mark Dunaway agreed to participate in the oil and gas industry in North Dakota with Stanton Dodson.

6.      Mark Dunaway testified that it was his understanding that Stanton Dodson and he would develop an oil and gas business in North Dakota, and then exit the business by a sale, merger or joint venture.

7.      **DISPUTED**

a.      **U.S. TRUSTEE'S VERSION: Neither Mark Dunaway nor Stanton Dodson invested any cash into any of the Debtors.  After Stanton Dodson's misdeeds were uncovered, Mark Dunaway signed promissory notes for loans made by other persons to cover Debtors' payroll obligations and other operating expenses.  These loans are listed on the Debtors' schedules.**

b.      **DEBTOR'S VERSION: Stanton Dodson did not invest any cash into any of the Debtors. Mark Dunaway invested and/or loaned approximately $500,000.00 to the North Dakota Businesses which included the debtors.**

8.      The oil and gas business developed by Stanton Dodson and Mark Dunaway consist of four separate ventures, each including several legal entities.

9.      The Debtors all are related to Pembroke Fields, LLC, an entity that owns a salt water disposal facility that is at the heart of these bankruptcy cases (the "Pembroke Business").

10.     The Pembroke Business was the second business venture undertaken by Mark Dunaway and Stanton Dodson in North Dakota.

11.     The Pembroke Business was set up with the following corporate structure. The limited partners invested their money into a partnership, which is the Debtor Citadel Watford Partnership.  Some of the money invested in Citadel Watford Partnership was used to fund the acquisition and development of the salt water disposal facility (along with other assets), purchased, developed and owned by a different entity, the Debtor Pembroke.

12.     The limited partners of Citadel Watford Partnership have no direct or

3

indirect ownership interest in Pembroke.

13.     Stanton Dodson and Mark Dunaway indirectly own a majority of the ownership interest of Pembroke.

14.      The Debtor Citadel Services provides management services to Pembroke.

15.     Citadel Energy Holdings, LLC and SWD Holdings are holding companies, allegedly holding ownership interests in Pembroke and Citadel Watford Partnership, respectively.

16.     Mark Dunaway testified that the intent was for Citadel Watford Partnership and Pembroke to enter into a revenue sharing agreement.  This revenue sharing agreement, however, was never executed.

17.     Prior to the Pembroke business, Mark Dunaway and Stanton Dodson entered into a business venture related to drilling freshwater wells into an aquifer on Indian lands, using state permits, and selling that water to oil companies for the production of oil or fracking.  This venture is hereinafter referred to as the "Fort Berthold Business."  The entities directly owning these assets are not debtors in these bankruptcy cases.

18.     The Fort Berthold Business was set up with a similar structure to the Pembroke Business.  A partnership was formed in which limited partners invested their money. The money invested by the limited partners was utilized by a separate limited liability company to acquire and develop the operating assets.

19.     The Fort Berthold partnership does not have a direct or indirect ownership interest in the company that owns the operating assets.  The limited liability company entered into a revenue sharing agreement with the partnership.

4

20.     Stanton Dodson and Mark Dunaway indirectly own a majority of the ownership interest in the Fort Berthold limited liability company that owns the Fort Berthold assets.

21.     A third, related company provided management services to the Fort Berthold limited liability company.

22.     The Fort Berthold Business is not currently operating.

23.     The third business venture undertaken by Stanton Dodson and Mark Dunaway, hereinafter referred to as the "Cherry Creek Business," relates to five water sources leased in McKenzie County, North Dakota.

24.     **DISPUTED**

a.     **U.S. TRUSTEE'S ASSERTED FACT: The "Cherry Creek Business" also relates to the rights to two saltwater disposal locations.**

25.     The Cherry Creek Business includes an entity in which investors invested money.  That entity owns certain assets.  Another company provided management services.

26.     The Cherry Creek Business is about to begin selling water.

27.     The fourth business venture undertaken by Stanton Dodson and Mark Dunaway, hereinafter referred to as the "Citadel H2O Business," relates to water rights leases. The entities that make up the Citadel H2O Business are partially owned, or were partially owned in the 90 days prior to the petition date, by Debtor Citadel Services.

28.      The Citadel H2O Business also has a partnership (H2O Partners, LP), into which the limited partners invested funds.  Those funds were used by a limited liability company (Citadel H2O, LLC) to purchase the operating assets.  The Debtor Citadel Services managed the

operating assets.

29.     The Citadel H2O partnership has no direct or indirect ownership of the company that owns the operating assets.

30.     The Debtor Citadel Services was the general partner of the H2O Partners, L.P..  On April 7, 2015, the limited partners removed Citadel Services as general partner.

31.     The Debtor Citadel Services owns 80% of the membership interest in Citadel H2O, LLC.

32.     On April 6, 2015, Mark Dunaway, allegedly as Manager of Citadel H2O, LLC, and a new entity formed by some or all of the limited partners of H2O Partners, LP (H2O-GP2, LLC), entered into a management agreement.  As of April 6, 2015, Debtor Citadel Services no longer managed Citadel H2O, LLC.

33.     The private placement memorandum for the Citadel H2O Business required Citadel H2O, LLC to transfer the ownership of the operating assets to the H2O Partners, LP, upon completion.  Completion occurred in 2014, and the assets were not transferred.

34.     An adversary proceeding was filed in these bankruptcy cases, asserting that the operating assets of Citadel H2O, LLC are held in constructive trust for the benefit of H2O Partners, LP.

35.     In the spring of 2014, the Citadel companies and all related entities began exploring potential exit transactions, including a sale of some or all of their assets, which would include all four business ventures.

36.     A company who was interested in such a transaction  requested financial documents, corporate governance documents, and other due diligence documents.

37.     Around the same time, limited partners in the various partnerships, including the Debtor Citadel Watford Partnership, also began asking for financial statements under their partnership agreements.

38.     For some time, Mark Dunaway also began asking for profit and loss statements and related financial data relating to the Debtors from Stanton Dodson and continued asking for such information for several months until the spring of 2015.

39.     **DISPUTED**

a.     <u>**DEBTORS' ASSERTED FACT**</u>:  **Stanton Dodson had sole access to the Debtors' profit and loss statements and related financial data relating to the Debtors.**

40.     The company who was interested in a possible purchase backed out due to the failure of the Debtors and their related entities to provide certain due diligence documents, including corporate governance documents and financial statements.

41.     The repeated demands for financial statements and access to books and records by the limited partners of both Debtor Citadel Watford Partnership and non-debtor H2O Partners, LP, were not met, resulting in a confrontation between some of the limited partners and Stanton Dodson on March 27, 2015.

42.     As a result of these various activities, Mark Dunaway learned that Stanton Dodson had been "looting" the companies.  Stanton Dodson took money from the Citadel companies, including the Debtors, inappropriately.  The exact amount improperly taken from the Debtors and their related entities is currently unknown.

43.     No forensic audit has been commenced by the Debtors.  Mark Dunaway

personally has retained Theresa Mack, a certified public accountant, to conduct a forensic audit of the Debtors.

44.     While the exact amount taken by Stanton Dodson is unknown, the March 2015 bank statements for Wells Fargo account number ending in 2928 for Citadel Services show that it made $38,473.52 in disbursements to or on behalf of Stanton Dodson from a single bank account in the month March 2015, including:

a. 3/2/15     iTunes     $ 24.99

b. 3/2/15     Objets D'Art & Spirit[7]     $2,000.00

c. 3/2/15     WT to Bank of America fbo Staton Dodson $2,155.00

d. 3/2/15     BlueShield of CA Stanton Dodson    $1.030.33

e. 3/3/15     Trans Way2Save Stanton Dodson Checking $7,200.00

f. 3/5/15     Objets D'Art & Spirit     $1,078.47

g. 3/5/15     Transfer to Dodson S Premier Checking     $1,900

h. 3/5/15     Farmers NW Life Insurance Joey Dodson[8] $277.00

i. 3/5/15     Hartford Life Insurance     $546.30

j. 3/6/15     Objets D'Art & Spirit     $204.00

k. 3/9/15     Objets D'Art & Spirit     $11.98

l. 3/9/15     iTunes     $18.98

---

[7]     Objets D'Art & Spirit sells Spiritual & Magical Gifts and provides what appear to be psychic services.

[8]     Joey Stanton Dodson is full name of Stanton Dodson.

     m.  3/9/15      Transfer to Dodson S Premier Checking $600.00

     n.  3/13/15     Objets D'Art & Spirit     $368.00

     o.  3/25/15     WT Bank of America fbo Stanton

         Dodson  $5,950.56

     p.  3/25/15     Transfer  Dodson, S Way2Save

         Checking        $15,000.00

     q.  3/30/15     Amazon.Com Prime NV Card     $107.91

45.    **DISPUTED**

    a.    <u>**U.S. TRUSTEE'S VERSION**</u>**: The Debtors did not provide all of their bank account statements to the U.S. Trustee.  Additional bank statements were provided as late as September 9, 2015.  The U.S. Trustee has been unable to adequately review all bank account statements for all possible improper transfers.**

    b.    <u>**DEBTORS' VERSION**</u>**: None of the bank records indicate that Mark Dunaway improperly received any funds from the Debtors' estates.**

46.    Stanton Dodson moved money from one Debtor or related entity to the other.  In some cases, intercompany loans were recorded or memorialized, in other cases they were not.

47.    Mark Dunaway was the functional CEO of the Citadel companies, including the Debtors.  While he did not officially hold this title, he held himself out as the CEO, and agrees that that role appropriately captures the services he provided.

48.    Mark Dunaway was the person who spent most of his time in the Debtors' facilities in North Dakota, commencing in 2012.

49.    Stanton Dodson maintained offices in Los Angeles, California, and performed the role of a CFO, although he did not hold that title.  All "back office" work was conducted in Los Angeles.

50.    **DISPUTED**

a.    **DEBTORS' ASSERTED FACT: Stanton Dodson was the sole signatory on all the Debtors' investment accounts from which funds were misappropriated.**

51.    **DISPUTED**

a.    **U.S. TRUSTEE'S VERSION: Between his first involvement in the company in 2012 through March 2015, Mark Dunaway never requested access to bank account statements for the Debtors or the related companies.  He never reviewed any bank account statements before March 2015.**

b.    **DEBTORS' VERSION: Between his first involvement in the company in 2012 through March 2015, Mark Dunaway never had access to bank account statements for the Debtors or the related companies.  He never reviewed any bank account statements before March 2015.**

52.    Mark Dunaway and certain of the investors began asking Stanton Dodson and the Debtors' accounting firm repeatedly for profit and loss statements and other financial documents starting in the spring of 2014, but neither Mark Dunaway nor the Debtors took formal legal action to obtain such documents.

53.    During the time that Mark Dunaway acted as CEO of the companies, the Debtors were maintaining multiple copies of books and records, some of which contain contradictory information.

54.    The Debtors' believe that some of the Debtors' books and records remain with Stanton Dodson.  A computer of the Debtors is also missing, and may be in the possession of Stanton Dodson.

55.    During the pre- and post-petition periods the Debtors' books have not been maintained contemporaneously in the Debtors' software system.  Rather, the Debtors create invoices for billing, make payment on accounts payable, and then forward this information to their outside accountants, who maintain the Debtors' books and records.

56.    During the pre-petition period, the Debtors' funds could be transferred by wire with the signature of a single person.

57.    Books and records were not kept contemporaneously.  Mark Dunaway did not review financials or other information, but rather relied upon the controller to keep him informed of payables and ensure there was money in the bank to cover checks he signed. The Debtors had employed a bookkeeper and two senior accountants. The bookkeeper and one of the accountants were terminated. The second accountant was to be terminated after the 2014 holidays, but quit before she was terminated. The Debtors' intent was to have their bookkeeping and accounting performed by an outside accounting firm.

58.    The Debtors' accountants have refused to provide copies of the Debtors' tax returns for tax years 2012 and 2013, or other books and records in their possession, to the Debtors.

59.    **DISPUTED**

a.    **U.S. TRUSTEE'S ASSERTED FACT: The Debtors have yet to take any legal action to obtain their books and records and tax returns from their**

**accountants.**

60.     The Debtors' files include multiple copies of financial statements, at or around the same date, with contradictory information.   The Debtors' books and records include partially executed operating agreements for some entities, and fail to include any operating agreements for other entities.

61.     <u>Citadel Energy Holdings, LLC</u>

b.     The Debtors filed bankruptcy for Citadel Energy Holdings, LLC, alleging that it is a Delaware limited liability company, and that it is the parent company of Debtor Pembroke.  The Debtors have since moved to dismiss this case, alleging that this entity has been cancelled.

c.     Mark Dunaway signed a certification attached to the petition, certifying that Citadel Energy Holdings, LLC was valid and had not been terminated.

d.     The Debtors' books and records do not reflect that any of the Citadel companies, or Stanton Dodson or Mark Dunaway, ever had any interest in a Delaware limited liability company named Citadel Energy Holdings, LLC.

e.     Citadel Energy Holdings, LLC, a Delaware limited liability company, was formed in 2007, at least four years before Stanton Dodson and Mark Dunaway commenced activities relating to their Citadel companies.

f.     This Delaware LLC was cancelled by a person named Shawn Fagan.  No one at the Debtors knows who Shawn Fagan is or why he would cancel a company allegedly owned by them.

g.     The Debtors' books and records establish that Stanton Dodson and

Mark Dunaway own an entity called Citadel Holdings, LLC, a North Dakota limited liability company.

        h.      Citadel Holdings, LLC, a North Dakota company, is the holding company that owns 95% of Pembroke.

        i.      Citadel Holdings, LLC, a North Dakota company, also owns the limited liability companies that own the assets in the Fort Berthold and Cherry Creek Businesses.

        j.      Stanton Dodson and Mark Dunaway each own 50% of Citadel Holdings, LLC, a North Dakota limited liability company.  The operating agreement for Citadel Holdings, LLC appoint both Stanton Dodson and Mark Dunaway as Managers.

        k.      Some of the Debtors' records refer to a "Citadel Energy Holdings, LLC, a North Dakota company."

        l.      There is no North Dakota limited liability company named Citadel Energy Holdings, LLC.

        m.      There is no executed operating agreement in the Debtors' books and records for Citadel Energy Holdings, LLC, a North Dakota limited liability company.

        n.      There is no reference in the Debtors' books and records to an entity "Citadel Energy Holdings, LLC, a Delaware limited liability corporation" other than the corporate resolutions adopted in connection with the filing of the bankruptcy cases.  There is no operating agreement – executed or not – for Citadel Energy Holdings, LLC, a Delaware limited liability company, in the Debtors' books and records.  There is no certificate of organization for a Citadel Energy Holdings, LLC in the Debtors' books and records.

62.    <u>Pembroke Fields, LLC.</u>

a.    The Debtors' books and records do not include a fully executed copy of the operating agreement of Pembroke.  The operating agreement in the Debtors' books and records is not signed by Stanton Dodson, but is signed by Mark Dunaway, as Manager of Citadel Energy Holdings, LLC, a North Dakota limited liability company (95% owner), and by Calumet Industries of Georgia, LLC (5% owner).

b.    Stanton Dodson would often not sign required documents.

c.    The Operating Agreement for Pembroke lists Citadel Energy Holdings, LLC, a North Dakota limited liability company, as the 95% member of Pembroke.

d.    The Certificate of Company Resolution and Incumbency that adopts the Operating Agreement of Pembroke lists Citadel Holdings, LLC, a North Dakota limited liability company, as the 95% Member of the Company, which is accurate.  This certificate is signed by Mark Dunaway.

e.    The Private Placement Memorandum of Pembroke stated that the salt water disposal facility would be owned by Pembroke SWD, LLC, an entity that does not exist.

f.    The other member of Pembroke, who holds 5%, is Calumet Industries of Georgia, LLC, an entity related to Louis Bridges, former corporate counsel to the Debtors.

g.    The operating agreement for Pembroke designates both Stanton Dodson and Mark Dunaway as Managers.

63.    <u>Citadel Energy Services, LLC</u>

a.    In the List of Equity Security Holders and Corporate Ownership Statement for Citadel Services and in the Citadel Services' Schedules and Statement of Financial Affairs, both filed in these cases, under penalty of perjury, Mark Dunaway certified that Citadel Services is owned 50% by him, and 50% by Stanton Dodson.

b.    The Debtors' books and records include an executed operating agreement for Citadel Services that reflects that Stanton Dodson owns 100% of the membership interests.

c.    The operating agreement appoints Stanton Dodson as the sole manager of Citadel Services.

**d.    DISPUTED**

**i.    <u>U.S. TRUSTEE ASSERTED FACT</u>:  Contrary to the statements contained in pleadings filed with the court, at his deposition, Mark Dunaway testified that Stanton Dodson orally agreed to give him a 45% ownership interest in Citadel Services, and that Stanton Dodson was the 55% member.  The Debtors' records do not reflect that Mark Dunaway owns any membership interest in Citadel Services.**

**e.    DISPUTED**

**i.    <u>U.S. TRUSTEE ASSERTED FACT</u>: At his deposition, Mark Dunaway also testified that two board members of Citadel Services, Eric Holomon and Nicholas Temple, were also granted 2%  or 2.5% interest in Citadel Services.  The Debtors' records do not reflect that Messrs. Holomon or Temple own any membership interest in Citadel Services.**

       **f.**     **DISPUTED**

         **i.**     **U.S. TRUSTEE ASSERTED FACT: At his deposition, Mark Dunaway further testified that some percentage ownership in Citadel Services was transferred to Louis Bridges, who was pre-petition corporate counsel to the Debtors.  Mark Dunaway could not testify what percentage ownership was granted to Mr. Bridges.  The Debtors' records do not reflect that Mr. Bridges owns any membership interest in Citadel Services.**

       **g.**     **DISPUTED**

         **i.**     **U.S. TRUSTEE ASSERTED FACT: Mark Dunaway does not know who owns what percentage of Citadel Services.**

       h.     The operating agreement for Citadel Services does not provide for a board of directors.

       **i.**     **DISPUTED**

         **i.**     **U.S. TRUSTEE ASSERTED FACT: However, Citadel Services has a four member board of directors, which consists of Stanton Dodson, Mark Dunaway, Eric Holomon and Nicholas Temple.**

       j.     The Debtors have asserted that Citadel Services provides management services to Pembroke.  The only management agreement in the Debtors' books and records is between Pembroke and Citadel Management Services, LLC, a North Dakota limited liability company.  This agreement is signed by Mark Dunaway on behalf of both Pembroke and Citadel Management Services, LLC.  The is no evidence that an entity named Citadel Management Services, LLC was ever formed in North Dakota.  There is no assignment of the

management services agreement from Citadel Management Services, LLC to Citadel Services.

64.    Citadel Energy SWD Holdings, LLC

a.    The Debtors' books and records do not contain any operating agreement for SWD Holdings.

b.    According to documents filed in these bankruptcy cases, SWD Holdings is wholly owned by Citadel Services.  According to the operating agreement of Citadel Services, Citadel Services is wholly owned by Stanton Dodson.

c.    According to the operating agreement for Citadel Watford Partnership, Stanton Dodson is the Manager of SWD Holdings.

65.    Citadel Watford City Disposal Partners, LP

a.    Citadel Watford Partnership's governing corporate document is its Limited Partnership Agreement, which is fully executed.  This agreement provides:

ii.    The General Partner is SWD Holdings.

iii.    Stanton Dodson is "the manager of the General Partner and therefore has authority to act on behalf of the Partnership as the manager of the General Partner and will be the primary signatory on behalf of the Partnership."

iv.    "The initial chief executive officer and chief financial officer of the Partnership shall be Stanton Dodson who has full authority to act on behalf of the Partnership in accordance with this Agreement and the Act."

v.    "The business, property and affairs of the Partnership shall be managed under the sole, absolute and exclusive direction of the General Partner, which may

from time to time delegate authority to officers or others to act on behalf of the Partnership.

Stanton Dodson, as the manager of the General Partner, shall be the primary signatory on behalf

of the partnership. …Without limiting the foregoing provision . . . , the General Partner, through

the actions of the General Partner's manager, Stanton Dodson, shall have the general power to

manage or cause the management of the Partnership (which may be delegated to officers of the

Partnership) . . . ."

> vi.     The General Partner may designate officers who are subject
"to the direction and oversight of the General Partner" and "shall have such titles and powers and
perform such duties as shall be determined from time to time by the General Partner. . ."

> vii.     The General Partner cannot be removed except by majority
vote of the Partners.

> b.     No vote of the limited partners was ever taken to remove the
General Partner.

> c.     On September 13, 2013, three days before the Citadel Watford
Partnership partnership agreement was signed by Stanton Dodson and Mark Dunaway, Mark

Dunaway signed a State of Delaware Certificate of Limited Partnership, which was filed with the

Delaware Secretary of State on that same date.  In that certificate, Mark Dunaway represented

that the general partner of the Partnership was Citadel Energy Partners, LLC.  That certificate

has not been amended.

> d.     SWD Holdings owns 47.5% of Citadel Watford Partnership.  The
limited partners collectively own 47.5% of the Partnership.  Leland Partners, LLC owns the

remaining 5%.[1]

66.    **DISPUTED**

a.    <u>**U.S. TRUSTEE'S VERSION**</u>: **After the limited partners uncovered Stanton Dodson's theft of funds, Mark Dunaway participated in an improper fraudulent transaction involving the Debtor Pembroke.**

b.    <u>**DEBTORS' VERSION**</u>: **After the limited partners uncovered Stanton Dodson's theft of funds, Mark Dunaway, at the demand of certain limited partners, agreed to resign as manager to assign all his interest in the Debtor Pembroke to the companies controlled by certain of the limited partners.**

67.    **DISPUTED**

a.    <u>**U.S. TRUSTEE'S VERSION**</u>: **On or about May 1, 2015, Mark Dunaway sold, transferred and assigned substantially all of the operating assets of Debtor Pembroke to North Dakota Water Partners, LLC.**

b.    <u>**DEBTORS' VERSION**</u>: **On or about May 1, 2015, Mark Dunaway resigned as manager and gifted, transferred and assigned substantially all of the operating assets of Debtor Pembroke to North Dakota Water Partners, LLC.**

68.    North Dakota Water Partners, LLC is a company formed by three of the approximately 41 limited partners of Citadel Watford.

69.    **DISPUTED**

a.    <u>**U.S. TRUSTEE'S VERSION**</u>: **There was no compensation paid**

---

[1] Leland Partners, LLC has joined in the U.S. Trustee's motion to convert these cases to cases under Chapter 7 of the Bankruptcy Code.

to Pembroke for the transfer of assets, and there was no written document obligating the transferee to assume any of the obligations of Pembroke.  The three limited partners provided loans to Citadel Services, Mark Dunaway and North Dakota Water Partners, to provide cash to fund the operation of the salt water disposal facility transferred to it (and previously owned by the Debtors).  These loans are listed as unsecured, but disputed, claims in the Debtors' schedules.

b.       **DEBTORS' VERSION**: There was no compensation paid to Pembroke or Mark Dunaway for the transfer of assets, and there was no written document obligating the transferee to assume any of the obligations of Pembroke, but the three limited partners did provide an infusion of necessary funds for the operation of the Debtor Pembroke at the time of the transfer.

70.      The lease held by Pembroke for the land upon which the salt water disposal facility is located includes a non-assignability clause.  Mark Dunaway assigned this lease to North Dakota Water Partners, LLC without obtaining the approval of the landlord.

71.      Mark Dunaway did not know how North Dakota Water Partners, LLC would treat the limited partners of Citadel Watford Partnership (the persons who invested their money for the acquisition and development of the Pembroke assets).

72.      **DISPUTED**

a.       **U.S. TRUSTEE ASSERTED FACT**: At the deposition of Mark Dunaway, he testified that the sale of the Pembroke assets was later rescinded.  No writing has been provided to the U.S. Trustee supporting that assertion.  It is therefore unclear if Debtor Pembroke, or any of the Debtors, actually own any operating assets.

73.     Stanton Dodson has not been removed as a member of any of the Debtor entities in which he has a direct membership interest, and he retains all such membership rights.

74.     Stanton Dodson has not been removed from the Board of Directors of Citadel Services, which is the only Debtor with a Board of Directors.

75.     Stanton Dodson remains as the primary signatory for Citadel Watford.

76.     SWD Holdings, which is 100% owned by Stanton Dodson, remains the General Partner of Citadel Watford Partnership.

77.     Stanton Dodson has not been removed as the Manager of any of the Debtors.

78.     An attempt to remove Stanton Dodson as Manager of Pembroke was made, but did not comply with the requirements of § 5.08 of the Pembroke operating agreement to remove a Manager, as such removal requires unanimous agreement of all members of Pembroke.

79.     **DISPUTED**

a.     **U.S. TRUSTEE'S VERSION: While Stanton Dodson appears to have absented himself from the Debtors' day to day operations, there is no indication that he has resigned as Manager, resigned from the Board of Directors, or abandoned his membership rights.  There is no evidence that Stanton Dodson has been given notice of these bankruptcy cases, and he was not informed of the vote to place any of the Debtors into bankruptcy.**

b.     **DEBTORS' VERSION: Stanton Dodson has effectively resigned from any managerial responsibility with any of the Debtors since late March 2015,**

**Stanton Dodson has had no role in the management with any of the Debtors, does not have control over any of the Debtors' assets (with the exception of a Ford Pickup truck which he refuses to return), and has had no involvement with the management of the Debtors, including, without limitation, representing the Debtors' with respect to the Debtors' customers or vendors.**

80.     Mark Dunaway signed the petition on behalf of Citadel Energy Holdings, LLC, which included a company resolution.  This petition asserts that the proper Debtor is Citadel Energy Holdings, LLC, a Delaware limited liability company, that venue is proper because the Debtor is domiciled in Delaware, and that the company validly exists and has not been terminated.  The resolutions state that there was a unanimous election of the members to file for bankruptcy protection.  These statements are untrue.

81.     **DISPUTED**

a.     <u>**DEBTORS' ASSERTED FACT**</u>**: Mark Dunaway signed the petition based on the only available information as Stanton Dodson had not communicated with Mark Dunaway or provided any requested information for two months.**

82.     If Citadel Energy Holdings, LLC, a Delaware entity, is the proper debtor, the statement in the Petition is untrue because it implied that the company validly exists and was not terminated.  Alternatively, if the proper debtor is Citadel Holdings, LLC, the North Dakota entity, which is reflected in the Debtors' books and records as the parent company of Pembroke, the statement is untrue because it is not domiciled in Delaware.  At a minimum, Mark Dunaway failed to properly ascertain the proper debtor and its corporate existence.

83.    **DISPUTED**

a.    **U.S. TRUSTEE'S VERSION: It is also untrue that the members of Citadel Energy Holdings, LLC unanimously elected to file for bankruptcy protection.  Mark Dunaway testified that Stanton Dodson owns 50% of the membership interests of Citadel Energy Holdings,  LLC, and the Debtors' books and records establish that Stanton Dodson owns 50% of the membership interests of Citadel Holdings, LLC. Whichever entity is actually the debtor, a 50% holder of membership interests – Stanton Dodson – did not vote to elect to file for bankruptcy.**

b.    **DEBTORS' VERSION: The Debtors' books and records establish that Stanton Dodson owns 50% of the membership interests of Citadel Holdings, LLC.  Whichever entity is actually the debtor, a 50% holder of membership interests – Stanton Dodson – did not vote to elect to file for bankruptcy as Stanton Dodson had taken no role in the operation of the Debtors and had failed and refused to communicate or provide books and records since the discovery of his alleged theft.**

84.    Stanton Dodson was not notified that a vote was taking place to file for bankruptcy for Citadel Energy Holdings, LLC.

85.    **DISPUTED**

a.    **DEBTORS' ASSERTED FACT: Stanton Dodson was not notified that a vote was taking place to file for bankruptcy for Citadel Energy Holdings, LLC because he refused to cooperate with the limited partners or Mark Dunaway.**

86.    Citadel Energy Holdings, LLC filed an amended petition, signed by Mark Dunaway with the same information.

87.    Mark Dunaway signed the petition on behalf of Citadel Services, including a corporate resolution stating that the members unanimously elected to file for bankruptcy.  This statement is untrue.

88.    **DISPUTED**

a.    <u>**U.S. TRUSTEE'S ASSERTED FACT**</u>**: The Debtors' books and records establish that the sole member of Citadel Services is Stanton Dodson.  Stanton Dodson did not vote to file for bankruptcy, and was not notified that such a vote was taking place.**

89.    The only persons who voted to place Citadel Services into bankruptcy, or were noticed that such a vote was taking place, was Mark Dunaway and Nicholas Temple.

90.    Mark Dunaway filed a List of Equity Holders for Citadel Services, wherein he stated under penalty of perjury that he and Stanton Dodson each own 50% of Services.  At his deposition, Mark Dunaway testified that such information is not correct.

91.    Mark Dunaway signed the Schedules and Statement of Financial Affairs for Citadel Services.  These include the following statements: (a) listing the membership interest of Stanton Dodson and Mark Dunaway as 50/50 owners and including incorrect corporate structure charts; (b) failing to list all payments to insiders during the one year prior to the petition date as noted in the Schedules and Statement of Financial Affairs, because the Debtors' records are incomplete and the Debtors require their outside accounting firm to provide certain requisite information; (c) failing to include himself as a co-debtor for promissory notes signed solely by him for funds used to fund the Debtors' payroll; and (d) includes debt incurred by North Dakota Water Partners, not the Debtors, during the time period that North Dakota Water Partners was

operating the assets.

92.    Mark Dunaway signed the petition for Citadel Watford Partnership as the General Partner.  The general partner of Citadel Watford Partnership is SWD Holdings.

93.    In the Certificate of Partnership Resolution and Incumbency, attached to the Petition, Mark Dunaway certified that he is the manager of the general partner of Citadel Watford Partnership.  The corporate records reflect that only Stanton Dodson is a manager of the general partner, which is SWD Holdings.

94.    Mark Dunaway signed the petition for SWD Holdings, including a corporate resolution that there was the unanimous election of the members to file for bankruptcy protection.   The sole member of SWD Holdings is Citadel Services.  Stanton Dodson is the sole member of Citadel Services.  Without Stanton Dodson's vote, there could not have been a unanimous election to file the bankruptcy petition of SWD Holdings.

95.    Mark Dunaway signed the petition for Pembroke, which included a corporate resolution stating that Pembroke was incorporated in the state of Delaware and that the parties unanimously elected to file for bankruptcy.   Pembroke is a North Dakota company.

96.    DISPUTED

a.    DEBTORS' ASSERTED FACT: Mark Dunaway signed the petition for Pembroke based on the information available to him.

97.    **DISPUTED**

a.    **U.S. TRUSTEE ASSERTED FACT: The 95% member of Pembroke is Citadel Holdings, LLC.  Stanton Dodson is a 50% member of Citadel Holdings, LLC.  Stanton Dodson was not given notice of any vote and did not vote on**

**placing Pembroke into bankruptcy.**

98.    Mark Dunaway signed the schedules and statements of financial affairs for Pembroke, which included the following inaccurate or incomplete information:  (a) failed to list the revenue sharing agreement required to be signed by the private placement memorandum of Pembroke; (b) no information regarding transfers to insiders during the one year preceding the petition date as noted in the Schedules and Statement of Financial Affairs, because the Debtors' records are incomplete and the Debtors require their outside accounting firm to provide certain requisite information; and (c) failing to include as unsecured claims loans made by certain persons to the Debtors prior to the petition date, which were subsequently memorialized in writings dated after the petition date.

99.    The Initial Debtor Interview ("IDI") between representatives of the U.S. Trustee's office and the Debtors was held on July 20, 2015 and July 27, 2015, at the U.S. Trustee's Office in Wilmington, Delaware.  The sole representative who attended on behalf of the Debtors, other than counsel, was Christopher Nicholas.  At the IDI, topics of discussion were the general background, history and financial affairs of the Debtors, as well as reporting requirements in bankruptcy.  Prior to the IDI, on June 30, 2015, there was a phone call between Mr. Nicholas, as representative of the Debtors, the Debtors' counsel, and representatives of the U.S. Trustee's office, in which the factual background of the Debtors, and the first day relief sought by the Debtors, was discussed.

100.    The Debtors sent Mr. Nicholas to the 341(a) meeting of creditors, as the Debtors' representative, even though he is not an officer of the Debtors.

101.    Mr. Nicholas has only been employed by the Debtors since the fall of 2014.  He has a communications degree.  He is the childhood best friend of a cousin of Stanton

Dodson.

102.    **DISPUTED**

a.    <u>**U.S. TRUSTEE'S VERSION**</u>: The testimony given by Mr. Nicholas at the 341(a) meeting contradicted the testimony given by Mark Dunaway and the documents produced by the Debtors:

i.    Mr. Nicholas testified that he did not know if the Debtors filed 2012 or 2013 taxes; Mr. Dunaway testified that they had.

ii.    Mr. Nicholas testified that the assets of Citadel H2O, LLC had been transferred to H2O Partners, LP; they were not.

iii.    Mr. Nicholas testified that Pembroke was obligated to transfer its assets to Citadel Watford Partnership upon completion; Mr. Dunaway testified that was never the intent, and rather, these parties were supposed to enter into a revenue sharing agreement.

iv.    Mr. Nicholas testified that the Debtors were not taking a position as to whether Stanton Dodson improperly took money from the Debtors; Mr. Dunaway testified that he believed that Stanton Dodson took monies improperly from the Debtors.

b.    <u>**DEBTORS' VERSION**</u>:

i.    Mr. Nicholas testified that he did not know if the Debtors filed 2012 or 2013 taxes.

ii.    Mr. Nicholas testified that the assets of Citadel H2O, LLC had been transferred to H2O Partners, LP.

       **iii.**      **Mr. Nicholas testified that Pembroke was obligated to transfer its assets to Citadel Watford Partnership upon completion.**

       **iv.**      **Mr. Nicholas testified that the Debtors were not taking a position as to whether Stanton Dodson improperly took money from the Debtors; because they have not completed their investigation.**

103. The documents attached as exhibit C to Mike West's declaration in support of the Trustee Motion are copies of documents the Debtors provided to the U.S. Trustee.

104. The Debtors do not maintain directors' and officers' insurance policies.

105. Certain limited partners have filed a complaint against Stanton Dodson, Mark Dunaway and Christopher Dopson, asserting bad acts against each of them.

106. **DISPUTED**

       a.      <u>**U.S. TRUSTEE'S VERSION**</u>**: Christopher Dopson held himself out as a "member" of the Debtors and related companies in at least one communication with the limited partners of Pembroke.**

       b.      <u>**DEBTORS' VERSION**</u>**: Christopher Dopson represented that under a proposed restructuring of Debtor Pembroke intended to remove Stanton Dodson that Christopher Dopson would become a "member" of the Debtors and related companies in at least one communication with the limited partners of Pembroke.**

107. The Debtors have only eight employees.  Of those eight employees, four are dedicated solely to manage non-debtor businesses (and are paid by non-debtor funds).

108. The Debtors will need debtor in possession financing in order to meet all operating and administrative expenses by the third week in September.

109.    The Debtors are currently operating at 20% capacity.

110.    **DISPUTED**

  a. <u>**U.S. TRUSTEE'S ASSERTED FACT**</u>**: The Debtors' monthly operating reports demonstrate that they are or soon will be administratively insolvent.**

111.    **DISPUTED**

  a. <u>**U.S. TRUSTEE'S ASSERTED FACT**</u>**: Christopher Dopson signed the First Day affidavit despite having no personal knowledge of the facts therein.**

112.    Neither Christopher Dopson nor Mark Dunaway appeared as a witness for the First Day hearings.  Christopher Nicholas was the Debtors' witness at the first day hearing.

113.    None of the limited partners who are plaintiffs in the California action brought against Debtor SWD Holdings are listed in the Debtors' creditor matrix.

114.    The Securities and Exchange Commission has commenced an investigation that may relate to one or more of the Debtors, and issued a subpoena to Citadel Energy Services, LLC as part of its investigation and examination.

### III.    <u>DAMAGES OR OTHER RELIEF</u>

1.    The U.S. Trustee seeks entry of an order appointing a chapter 11 trustee, or alternatively an examiner, in each of the Debtors' bankruptcy cases, or, in the alternative, converting each of the Debtors' cases to cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

2.    The Debtors object to the U.S. Trustee's motion and seek to have it denied.

# IV.        LEGAL ISSUES PRESENTED

1.        Whether cause exists under section 1104(a) of the Bankruptcy Code for the appointment of a chapter 11 trustee in each of the Debtors' bankruptcy cases.  The U.S. Trustee has the burden of proof on this legal issue.  The U.S. Trustee takes the position that he must meet that burden of proof by a preponderance of the evidence, in light of Supreme Court precedent and the addition of section 1104(e) of the Bankruptcy Code.[2]  The Debtors take the position that grounds for the appointment of a trustee must be established by "clear and convincing" evidence.[3]

2.        If the Court determines that sufficient cause does not exist under section 1104(a) of the Bankruptcy Code to appoint a chapter 11 trustee in each of the Debtors' bankruptcy cases, whether it would be in the best interest of the creditors and other parties in interest for the appointment of a trustee in each of the Debtors' bankruptcy cases under section 1104(a)(2) of the Bankruptcy Code.   The U.S. Trustee has the burden of proof on this legal issue.  The U.S. Trustee takes the position that he must meet that burden of proof by a preponderance of the evidence, in light of Supreme Court precedent and the addition of section 1104(e) of the Bankruptcy Code[4].   The Debtors take the position that grounds for the appointment of a trustee must be established by "clear and convincing" evidence[5].

3.        Whether cause exist to convert each of the Debtors' bankruptcy cases under section 1112 of the Bankruptcy Code, and therefore supports a determination that the

---

[2]        *See Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991)).

[3]        *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998).

[4]        *See Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991)).

[5]        *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 471 (3d Cir. 1998).

appointment of a trustee or an examiner is in the best interests of creditors and the estate pursuant to section 1104(a)(3) of the Bankruptcy Code.  The U.S. Trustee has the burden of proof on this legal issue, and must meet that burden with a preponderance of the evidence.

4.    Whether, if the Court does not appoint a chapter 11 trustee, cause exist to appoint an examiner to promptly investigate the finances and operations of the Debtors and make appropriate recommendations.  The U.S. Trustee has the burden of proof on this legal issue, and must meet that burden with a preponderance of the evidence.

5.    Whether cause exist under section 1112 of the Bankruptcy Code for the conversion for each of the Debtors' cases.  The U.S. Trustee has the burden of proof to first establish "cause" to convert each of the Debtors' cases.  *See* § 1112(b)(1).   If the U.S. Trustee establishes cause, then the burden shifts to each of the Debtors, who must then show "unusual circumstances" establishing that converting the case is not in the best interests of creditors and the estate, and establishes  the elements enumerated by section 1112(b)(2)(A) and (B).  *See* § 1112(b)(1)-(2).

## V.        Witnesses

1.    **United States Trustee:**

       a.  Mark Dunaway (direct and/or rebuttal)

       b.  Mark Christopher Dopson (direct and/or rebuttal)

       c.  Michael West (for rebuttal, if necessary)

       d.  Diane Giordano (for rebuttal, if necessary)

       e.  Edward T. Gavin (for rebuttal, if necessary)

2.    **Debtors:**

       a.  Mark Dunaway (direct and/or rebuttal)

    b.  Mark Christopher Dopson (direct and/or rebuttal)

    c.  Christopher Nicholas (direct and/or rebuttal)

    d.  Edward T. Gavin (direct and/or rebuttal)

### VI.    List of All Exhibits

**1.    United States Trustee**

| Stipulated[6] | Exhibit No.[7] | Description |
|---|---|---|
| | UST 1 | Notice of Deposition and attached Subpoena Duces Tecum directed to Christopher Dopson |
| yes | 2 | Monthly Operating Report for July, 2015 for Debtors (Dkt. No. 105) |
| yes | 3 | Employment Agreement of Chris Dopson, dated 2-9-15 |
| yes | 4 | Email about vehicles, dated 6-23-15 |
| yes | 5 | 1st Day Declaration of Chris Dopson, dated 6-19-15 (Dkt. No. 5) |
| | 6 | Debtors' 13 Week Cash Flow, Pro Forma, dated 8-7-15 |
| | 7 | List of Debtors Bank Accounts |
| | 8 | Corporate chart prepared by Office of U.S. Trustee |
| | 9 | Debtors Schedules & Statement of Financial Affairs filed on 7-21-15 |
| yes | 10 | Wells Fargo Bank Statement for March 2015, for Citadel Energy Services, LLC |
| yes | 11 | Stanton Dodson and EIG5 Memo of Understanding 3-27-15 |
| | 12 | CEH Delaware Secretary of State Certificate, dated |

---

[6]   Stipulated by Debtors' counsel as to authenticity and admissibility, reserving objections with respect to relevance.

[7]   Exhibits 1 – 19 are the exhibits marked at the deposition of Chris Dopson.  Exhibits 20 through 68 are the exhibits marked at the deposition of Mark Dunaway.  Exhibits no. 68-95 were not marked at any deposition.  Exhibits 96 and 97 were marked at the deposition of Edward T. Gavin.

| | 13 | Kaye Scholer Report to Citadel Energy, dated 1-21-15 |
|---|---|---|
| | 14 | Letter from Louis Bridges to Mark Dunaway, dated 5-29-15 |
| | 15 | Complaint in *Leland Properties, LLC, et al. v. Citadel Energy Partners, LLC, et al.,* Case No. BC 584818 (Superior Court of the State of California for the County of Los Angeles ) |
| | 16 | Linked-In page for Christopher Dopson |
| | 17 | Carson City Memo re-analysis of general ledger activity, dated 4-4-15 |
| | 18 | Gmail Focus Group |
| Yes | 19 | Cioffi Promissory Note 8-8-15 |
| | 20 | Notice of Deposition and attached Subpoena Duces Tecum, directed to Mark Dunaway, dated 08-14-15 (Case No. 15-11322-KJC, D.I. 97) |
| Yes | 21 | Trial Subpoena direct to Mark Dunaway, dated 09-02-15 |
| | 22 | Fort Berthold Water Partners, LP Confidential Private Placement Memorandum |
| Yes | 23 | Voluntary Petition of Citadel Energy Holdings, LLC filed 06-19-15 (Case No. 15-11322-KJC, D.I. 1) |
| Yes | 24 | Amended Voluntary Petition of Citadel Energy Holdings, LLC filed 07-02-15 (Case No. 15-11322-KJC, D.I. 32) |
| Yes | 25 | List of Equity Security Holders and Corporate Ownership Statement Citadel Energy Holdings, LLC filed 06-29-15 (Case No. 15-11322-KJC, D.I. 21) |
| | 26 | LinkedIn Profile for Shawn Fagan Dated 08-31-15; Company Overview from www.citadel.com website, dated 08-31-15; and Citadel Chicago Global Headquarters Information from www.citadel.com Dated 08-31-15 |
| yes | 27 | Certificate of Organization of Citadel Holdings, LLC, issued 07-25-14 |
| yes | 28 | Certificate of Company Resolution and Incumbency |

| | | |
|---|---|---|
| | | (Citadel Holdings, LLC, a North Dakota liability company) dated 12-19-14 |
| yes | 29 | Operating Agreement of Citadel Holdings, LLC, a North Dakota limited liability company, dated 07-25-14 |
| yes | 30 | Certificate of Company Resolution and Incumbency (Citadel Holdings, LLC, a North Dakota liability company) |
| | 31 | Unsigned Operating Agreement of Citadel Energy Holdings, LLC, a North Dakota limited liability company (f/k/a Citadel Holdings, LLC), dated 07-25-14 |
| | 32 | Listing of certain Citadel companies and agreements relating to the same |
| | 33 | Corporate chart of Cherry Creek SWD, LLC by Stanton Dodson and/or Mark Dunaway |
| yes | 34 | Voluntary Petition of Citadel Energy Services, LLC Filed 06-10-15 (Case No. 15-11326-KJC, D.I. 1) |
| yes | 35 | List of Equity Security Holders and Corporate Ownership Statement of Citadel Energy Services, LLC, dated 06-26-15, filed 06-29-15 (Case No. 15-11326-KJC, D.I. 7) |
| yes | 36 | Operating Agreement of Citadel Energy Services, LLC a Wyoming limited liability company, dated 05-02-13 |
| | 37 | Voluntary Petition of Citadel Watford City Disposal Partners, LP, filed 06-19-15 (Case No. 15-11323-KJC, D.I. 1) |
| yes | 38 | List of Equity Security Holders and Corporate Ownership Statement of Citadel Watford City Disposal Partners, LP, dated 06-29-15, filed 06-29-15 (Case No. 15-11323-KJC, D.I. 7) |
| yes | 39 | State of Delaware, Certificate of Limited Partnership of Citadel Watford City Disposal Partners, LP, dated 09-13-13 with receipt from State of Delaware Secretary of State dated 09-16-13 |
| yes | 40 | Limited Partnership Agreement of Citadel Watford City Disposal Partners, LP, dated 09-16-13 |

| yes | 41 | Voluntary Petition of Citadel Energy SWD Holdings, LLC, filed 06-19-15 (Case No. 15-11325-KJC, D.I. 1) |
|-----|-----|------|
| yes | 42 | Corporate Ownership Statement of Citadel Energy SWD Holdings, LLC, dated 06-26-15, filed 06-29-15 (Case No. 15-11325-KJC, D.I. 7) |
| yes | 43 | Voluntary Petition of Pembroke Fields, LLC Filed 06-19-15 (Case No. 15-11324-KJC, D.I. 1) |
| yes | 44 | Corporate Ownership Statement of Pembroke Fields, dated 06-26-15, filed 06-29-15 (Case No. 15-11324-KJC, D.I. 7) |
| yes | 45 | Certificate of Organization of Pembroke Fields, LLC Dated 08-06-13 |
| yes | 46 | H2O Partners, LP Confidential Private Placement Memorandum, dated 08-05-14 |
| yes | 47 | Operating Agreement of Pembroke Fields, LLC, a North Dakota limited liability company, dated 08-06-13 |
| yes | 48 | Citadel Watford City Disposal Partners, LP Confidential Private Placement Memorandum |
| NO | 49 | Agreement to Participate in Profits between Pembroke Fields, LLC, a North Dakota limited liability company and Citadel Watford City Disposal Partners, LP, a Delaware limited liability company |
| yes | 50 | Certificate of Company Resolution and Incumbency (Pembroke Fields, LLC, a North Dakota liability company), dated 05-01-14 |
| yes | 51 | Pembroke Fields, LLC Operation and Management Services Agreement, dated 07-25-14 |
| NO | 52 | Focus Capital Partners, LLC Term Sheet for the Issue of Units in a Special Purpose Partnership or Member Interest in an LLC |
| yes | 53 | Focus Capital Partners, LLC Consulting Agreement Dated 07-25-14 |
| yes | 54 | Citadel Energy $300 Million Prospectus |

| yes | 55 | Citadel Energy $140 Million Prospectus |
|-----|-----|-----|
| yes | 56 | Memorandum of Understanding dated 03-27-15 between Stanton Dodson and EIG5 LLC |
| yes | 57 | Assignment and Assumption of Permits and License Agreement Between Citadel Energy Services, LLC, a North Dakota limited liability company and North Dakota Water Partners, LLC, a Delaware limited liability company dated 05-01-15 |
| yes | 58 | Bill of Sale Agreed to Pembroke Fields, LLC, a North Dakota limited liability company by North Dakota Water Partners, LLC, a Delaware limited liability company, dated 05-01-15 |
| yes | 59 | Assignment and Assumption of Lease Between  Pembroke Fields, LLC, a North Dakota limited liability company and North Dakota Water Partners, LLC, a Delaware limited liability company, dated 05-01-15 |
| yes | 60 | Letter from Alastair Smith, Managing Member of Dakota MP, LLZC and Managing Partner of North Dakota Water Partners, LLC to Citadel Watford City Disposal Partners, LP, dated 05-12-15 |
| yes | 61 | E-mail from Chris Dopson to Michael Busenkell, dated 08-31-15, with Letter from Chris Dopson to Limited Partners of the Pembroke Fields SWD with Business Plan, dated 06-08-15, and Letter from Chris Dopson to Nathan Dahl with Business Plan, dated 06-04-15 |
| yes | 62 | Pembroke SWD#1 Business Plan, dated 06-04-15 |
| yes | 63 | Letter from Louis E. Bridges to Stanton Dodson, relating to Pembroke, dated 04-08-15 |
| yes | 64 | Promissory Note from Pembroke Fields, LLC, to Cleburne E. Gregory and Julia T. Gregory, dated 08-18-15 |
| yes | 65 | Promissory Note from Pembroke Fields, LLC, to Hu Family Trust, dated 08-18-15 |
| yes | 66 | Promissory Note from Pembroke Fields, LLC, to Randal Ivan Humich Shop, dated 08-18-15 |

| | | |
|---|---|---|
| yes | 67 | Promissory Note from Pembroke Fields, LLC, to Sean M. Sullivan, dated 08-18-15 |
| yes | 68 | Proof of Claim against Citadel Energy Holdings filed by JW Equities LLC, JWGST LLC and Joseph Wilen |
| Yes | 69 | Citadel Energy Services LLC Tax Return (state and federal) for quarter ended 12.31.14, indicating Stanton Dodson as sole member |
| Yes | 70 | Citadel Energy Services LLC Tax Return (state and federal) for quarter ended 3.31.15, indicating Stanton Dodson as sole member |
| Yes | 71 | Certificate of Organization for Citadel Energy SWD Holdings, LLC from Secretary of State of North Dakota dated 11.6.13 |
| | 72 | Notice of Termination to Stanton Dodson as manager of Pembroke, from H20-GPS, LLC, dated 4-13-15 |
| | 73 | Letter from Andrew Rogvin of Hinckley Allen to Citadel Energy Services LLC re H20 Partners, LP, dated 4-7-15 |
| | 74 | North Dakota Water Solutions, LP May 2015 presentation |
| | 75 | Letter from Carl Coward and Alastair Smith to CWCDP Limited Partners re Citadel Watford City Disposal Partners, LP, dated 4-15-15 |
| | 76 | Summary of bank transfers to Stanton Dodson or persons or entities associated with him from Debtors and affiliates |
| Yes | 77 | Email from Christopher Nicholas to Emily Cunningham, re Pembroke Fields Update, dated 8-4-15 |
| Yes | 78 | Email from Christopher Nicholas to Chris Dopson, Mark Dunaway and Louis Bridges re Draft on behalf of Dopson to the LP group, dated 6-12-15 |
| Yes | 79 | Email from Mark Dunaway to Chris Dopson re documents relating to H20 Partners, dated 7-13-15 at 9:54 a.m. |
| Yes | 80 | Email from Mark Dunaway to Chris Dopson re Citadel Diligence Process, dated 7-13-15 at 10:15 a.m. |

| Yes | 81 | Revolving Secured Promissory Note from Citadel Energy Services LLC to J.W. Equities LLC, dated 3-26-15 |
|---|---|---|
| Yes | 82 | Secured Promissory Note from Mark Dunaway to Focus Capital Partners and JWGST LLC, dated 4-9-15 |
| Yes | 83 | Secured Promissory Note # 2 from Mark Dunaway to Focus Capital Partners and JWGST LLC, dated 4-22-15 |
|  | 84 | Loan Agreement with JWE Investment Management Services LLC as Lender and North Dakota Water Partners as Borrower for $7,750 |
|  | 85 | Loan Agreement with JWE Investment Management Services LLC as Lender and North Dakota Water Partners as Borrower for $ 15,000, with an effective date of May 11 |
|  | 86 | Loan Agreement with JWE Investment Management Services LLC as Lender and North Dakota Water Partners as Borrower for $ 15,000 with an effective date of May 19 |
| Yes | 87 | Promissory Note from Pembroke Fields LLC to Ralph R. Cioffi, Jr. and Phillis Cioffi, dated 8-18-15 |
| Yes | 88 | Promissory Note from Pembroke Fields LLC to Turchet Construction, dated 8-18-15 |
| Yes | 89 | Promissory Note from Pembroke Fields LLC to Cleburne E. Gregory and Julia Gregory, dated 8-18-15 |
| Yes | 90 | Promissory Note from Pembroke Fields LLC to Clark Advisory Services, LLC, dated 8-18-15 |
|  | 91 | Chart of Agreements Entered into by Citadel Watford City Disposal Partner, LP |
|  | 92 | Chart of Agreements Entered into by Pembroke Fields, LLC |
| Yes | 93 | Saltwater Injection and Surface Use Lease between Pembroke Fields, LLC and Nathan Dahl, dated 9-12-13 |
| Yes | 94 | Email from Mike Busenkell to Juliet Sarkessian regarding location and possession of Debtors' bank statements, dated 9-1-15 at 11:11 a.m. |
| Yes | 95 | Email from Mike Busenkell to Juliet Sarkessian regarding |

| | | |
|---|---|---|
| | | location and possession of Debtors' bank statements, dated 9-1-15 at 1:32 p.m. |
| | 96 | Notice of Deposition and attached Subpoena Duces Tecum directed to Edward T. Gavin (D.I. 127) |
| | 97 | Debtors' Application to Retain Gavin/Solmonese LLC as Chief Restructuring Officer (D.I. 112) |

The United States Trustee reserves his right to add demonstrative or illustrative exhibits that summarize information from documents and/or testimony.

The United States Trustee further reserves his right to add any document produced by the Debtors to this exhibit list.

Without limiting the foregoing, the United States Trustee reserves his right to include as an exhibit any bank account statement contained on the thumb drive produced by the Debtors on Monday, August 24, 2015. These bank statements were not clearly marked, and the United States Trustee therefore did not have sufficient time to review these statements prior to 9.3.15.

The United States Trustee further reserves his right to include as an exhibit any document produced by the Debtors on Tuesday, September 1, 2015, in both the hard copy production and the thumb drive, which included approximately 14,000 documents. The United States Trustee further reserves the right to include as an exhibit any document produced by the Debtors on Wednesday, September 2, 2015 via thumb drive, which contained over 32,000 separate emails, some with multiple attachments.

> 2.  **Debtors:**

The Debtors will not be introducing into evidence any exhibits other than certain ones included in the U.S. Trustee's list of trial exhibits.

**VII.    List of Each Discovery Item and Trial Deposition to be Offered into Evidence.**

1.  **U.S. Trustee**

> a.  Testimony of Christopher Nicholas at 341(a) meeting of creditors on July 27, 2015.

> b.  Deposition Testimony of Christopher Dopson on August 26, 2015 (to the extent necessary).

> c.  Deposition Testimony of Mark Dunaway on September 2, 2015.

> d.  Deposition Testimony of Edward T. Gavin on September 8, 2015 (to the extent necessary).

2.      **Debtors**

None.


## VIII.      Estimated length of trial.

One day.